[Civ. No. 26458. Second Dist., Div. One. Sept. 17, 1962.]

AMERICAN SOCIETY OF COMPOSERS, AUTHORS AND PUBLISHERS, Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; BERNARD HERRMANN, Real Party in Interest.

O'Melveny & Myers, Bennett W. Priest and Henry C. Thumann for Petitioner.

No appearance for Respondent.

David G. Licht for Real Party in Interest.

THE COURT.—An alternative writ of prohibition was granted by this court on the application of petitioner herein and it was ordered that respondent show cause why it should not be absolutely restrained from any further proceedings in that certain action now pending before respondent entitled *"Bernard Herrmann,* Plaintiff, vs. *American Society of Composers, Authors and Publishers,* Defendant" bearing Number 770507.

Petitioner is an unincorporated membership association, hereinafter called "ASCAP," organized to serve as a clearing house for users who render public performances for profit of copyrighted musical works, and for its members—the composers, authors, and publishers of such musical compositions. On behalf of its members, it grants nonexclusive licenses to radio and television networks and stations, restaurants, night

clubs and other such users of music permitting them to render nondramatic performances of its members' musical works. The license fees collected are distributed, after deduction of operating expenses, to the members; one-half of such royalty distribution goes to the publisher members and one-half thereof to the composer and author (writer) members of petitioner.

Bernard Herrmann, the real party in interest herein, applied in writing for membership in ASCAP on or about November 1, 1943, as a writer of certain specified musical compositions. By said application Herrmann agreed that he would, if elected, abide and be bound by the Articles of Association thereof then in effect or as they might be thereafter amended. He executed a membership agreement in writing dated January 28, 1944, wherein he agreed that the royalties distributed by petitioner shall be divided into two equal sums, one such sum to be divided among the writer members "in accordance with the system of distribution and classification as determined by the Classification Committee . . . , in accordance with the Articles of Association as they may be amended from time to time, except that the classification of the Owner within his class may be changed." In said agreement Herrmann further agreed that his classification in ASCAP as determined from time to time by the classification committee of his group or a review board established under the Articles of Association "shall be final, conclusive and binding upon him." The agreement further provides: "The Society shall have the right to transfer the right of review of any classification from the Board of Directors to any other agency or instrumentality that in its discretion and good judgment it deems best adapted to assuring to the Society's membership a just, fair, equitable and accurate classification." Also: "The Society shall have the right to adopt from time to time such systems, means, methods and formulae for the establishment of a member's status in respect of classification as will assure a fair, just and equitable distribution of royalties among the membership."

Herrmann remained a member from January 28, 1944, until December 31, 1959, upon which date he withdrew from membership having given proper written notice thereof to petitioner. His resignation was expressly subject to any rights or obligations existing between petitioner and its licensees under then existing licenses, and to his right to continue to

receive a proportionate share of distribution from royalties accruing under such licenses. Shortly prior to his withdrawal from membership, Herrmann complained in writing that he was not receiving the share of the royalties distributed by petitioner to which he claimed he was entitled. Certain adjustments were made. On August 24, 1960, his counsel made a formal demand, "pursuant to Article XIV, Section 6B of the Articles of the Association of ASCAP . . . for a hearing to protest the payments made to him by the Society for the years 1955 through 1959 inclusive." A hearing was given by the administrative tribunal on November 15, 1960, at which Herrmann was not present but was represented by counsel. His counsel's statement to the tribunal as to his position with respect to Mr. Herrmann's rights as a member of ASCAP was "that ASCAP has wrongfully discriminated against those members who write scores and background music, both in the allocation of moneys due as well as the interpretation of the Rule of ASCAP." In February 1961, the board rendered its written decision, fully setting forth its reasons for its determination which was adverse to these specific as well as other general contentions advanced on behalf of Herrmann. A copy of the decision was served on Herrmann. He filed no appeal from the decision.

On May 8, 1961, Herrmann (hereinafter referred to as "plaintiff") filed his complaint in the superior court in which it is alleged, upon information and belief, in paragraph VI thereof, "that he has not received full and adequate compensation under the terms of his membership agreement with the SOCIETY; that he has not received a true and accurate accounting from the defendant of all the uses of his work and that the defendant, by virtue of its method of evaluation and crediting, has wrongfully discriminated against plaintiff, and plaintiff's musical compositions." Also: "Plaintiff is further informed and believes and therefore alleges that notwithstanding the existing system of evaluation and crediting under the membership agreement between plaintiff and defendant, the defendant has not accurately and truthfully accounted to plaintiff for all the uses of his works which were reported to the defendant by the users thereof." (Paragraph VII.)

Plaintiff then alleged that "pursuant to the membership agreement between plaintiff and defendant, plaintiff has prosecuted all remedies available to him thereunder; that

defendant has failed, neglected and refused, and does now fail, neglect and refuse to account to plaintiff for the uses, credits and money owed and due therefrom, which result from the public representation of the plaintiff's musical compositions.''

In its answer, ASCAP denied, among other things, that plaintiff had prosecuted all remedies available to him, and alleged therein as an affirmative defense that plaintiff has failed to exhaust the remedies provided by article XIV, section 6B of the society's 1960 Articles of Association, a copy of which was incorporated in the answer.

In October 1961, ASCAP filed a motion for a summary judgment of dismissal of the action upon the ground that it had no merit and that there was no triable issue of fact. Filed in support thereof was the affidavit of Stanley Adams, president of ASCAP. (It is to be noted that in ASCAP's answer to the complaint, in Mr. Adams' affidavit, as well as in Herrmann's formal protest of August 24, 1960, reference is made to art. XIV, § 6B of the society's articles which became effective April 1, 1960.) This motion for a summary judgment was opposed by a declaration of Herrmann in which it is asserted that he is seeking an accounting only for that period of time during which he was a member of the society; that subsequent to his withdrawal from membership on December 31, 1959, he ''did not have any contractual or any other obligations or relations with the Society; that I am not now and have not been since December 31, 1959 a signatory to the Articles of Association of the Society and I therefore verily believe that I am not bound by the Rules and Regulations contained therein; that I acknowledge I caused my attorney David G. Licht to file a protest with the Society and that said protest was heard by the Society's Board of Review; . . . that the Articles of Association attached to the Society's answer and marked EXHIBIT A are not the same Articles which bound me. An examination of said EXHIBIT 'A' will show that said Articles became effective as of April 1, 1960, which is approximately four months subsequent to the date that I resigned from the Society, and I further declare that I am only bound by the the Rules and Regulations contained in the Society's Articles dated June 1, 1954. Nowhere in the Articles dated June 1, 1954 are there provisions for protest of the nature which is the gravamen of my complaint herein. Article XIV, Sections

4, 6 and 6B of the 1954 Articles merely provide for protest procedure against another member of the Society and/or from the classification of a member by the Society.

"The Society, in its answer, continually refers to its 'Administrative Remedies' as provided in its Articles effective April 1, 1960." Following oral argument, the motion was denied on October 23, 1961.

In March of 1962, a set of interrogatories was filed by Herrmann. ASCAP filed objections thereto and, at the same time, renewed its motion for a summary judgment of dismissal upon the grounds that the court did not have jurisdiction of the action, that the action has no merit, and that there is no triable issue of fact. The notice of motion states that it will be based upon the affidavit of Stanley Adams previously filed on October 9, 1961, additional affidavits of Mr. Adams dated October 20, 1961, and April 27, 1962, the affidavit of Bennett W. Priest, an attorney for ASCAP, the memorandum of points and authorities filed therewith, "and the files and records of this action."

In the April 27 Adams' affidavit it is stated that on the morning set for the hearing of the first motion for summary judgment, counsel for ASCAP was served with Herrmann's declaration in opposition to the motion; that ASCAP had no opportunity to present facts in rebuttal of the assertions therein made which attempted to raise questions of fact, and that the purpose of these affidavits is to show that those assertions were unfounded and that there is no genuine issue of fact to be tried. Herrmann filed points and authorities in opposition to this motion, but no counteraffidavit. We feel that, in the circumstances, however, the averments of his affidavit in opposition to the first motion were sufficiently before the court for its consideration upon the renewal of the motion.

For the purpose of showing lack of jurisdiction in the court and that ASCAP has an absolute defense to the action, facts are set forth in its supporting affidavits (with exhibits) intended to show that "(a) the relief sought by plaintiff before the Board of Review was identical to the relief sought herein and that the Board is empowered to grant such relief; and . . . that (b) plaintiff is bound by the decision of the Board of Review because (i) that Board was merely a successor tribunal to the Board of Appeals, from which an appeal lay, since 1957, to a Panel of Arbitrators appointed

pursuant to the Rules of the American Arbitration Association and (ii) plaintiff himself invoked the grievance machinery by filing a formal protest to the Board of Review and participating, through counsel, in the Board's Hearing on the merits.''

On May 11, 1962, the motion was denied, the minute order reading: ''MOTION DENIED, on grounds there is a triable issue of fact as to whether the relief sought by the complaint was within the administrative remedy available to the plaintiff.'' The filing of the within petition for a writ of prohibition followed on May 15, 1962.

Prohibition will lie to restrain a court from proceeding without or in excess of its jurisdiction. (Code Civ. Proc., § 1102; *Abelleira* v *District Court of Appeal,* 17 Cal.2d 280, 291 [109 P.2d 942, 132 A.L.R. 715].)

Whether or not respondent court has jurisdiction to proceed in this matter depends upon whether or not the real party in interest herein has exhausted all internal remedies available to him with regard to his present grievance, for the exhaustion of internal remedies is a jurisdictional prerequisite to resort to the courts. (*United States* v. *Superior Court,* 19 Cal.2d 189, 194 [120 P.2d 26]; *Abelleira* v. *District Court of Appeal, supra,* 17 Cal.2d 280, 293.) It is pertinently stated in *Holderby* v. *International Union etc. Engrs.,* 45 Cal.2d 843, 846 [291 P.2d 483]: "It is the general and well established *jurisdictional rule* that a plaintiff who seeks judicial relief against an organization of which he is a member must first invoke and exhaust the remedies provided by that organization applicable to his grievance. (*Lawson* v. *Hewell, supra,* 118 Cal. 613 [50 P. 763, 49 L.R.A. 400]; *Levy* v. *Magnolia Lodge No. 29, I.O.O.F.,* 110 Cal. 297 [42 P. 887].) This rule is analogous to the rule requiring the exhaustion of administrative remedies as a condition precedent to resorting to the courts (see 2 Cal.Jur.2d 304), and to the rule requiring the parties to a contract for arbitration of disputes to exhaust those remedies before seeking judicial relief. (See *Cone* v. *Union Oil Co.,* 129 Cal.App.2d 558 [277 P.2d 464], and cases collected at p. 563.) Such rules are based on a practical approach to the solution of internal problems, complaints and grievances that arise between parties functioning pursuant to special and complex agreements or other arrangements. They make possible the settlement of such matters by simple, expeditious and inexpensive procedures, and by per-

sons who, generally, are familiar therewith. Such internal remedies are designed not only to promote the settlement of grievances but also to promote more harmonious relationships, and the courts look with favor upon them." (Emphasis added.)

The jurisdictional question is one for the determination of the trial court in the first instance. As stated in *Rescue Army* v. *Municipal Court*, 28 Cal.2d 460, 464 [171 P.2d 8]: "A court has jurisdiction to determine its own jurisdiction, for a basic issue in any case before a tribunal is its power to act, and it must have authority to decide that question in the first instance. It is necessary, therefore, to challenge the jurisdiction of the trial court *in that court,* by demurrer, motion, plea or other objection of some kind, so that *that court* may preliminarily decide the question whether it has jurisdiction to proceed. And unless a party can show that a lower tribunal, *after first determining that it has jurisdiction, is proceeding to exercise it,* there is nothing for a higher court to prohibit. This obvious principle is one of the cornerstones of our system of lower and higher tribunals." The court continues (pp. 464-465): "When, however, the trial court has heard and determined the jurisdictional challenge, and has decided in favor of its own jurisdiction, and then proceeds to *act,* that is, *to try* the case on its merits, the situation is entirely different. It then may be properly claimed that a court without jurisdiction is purporting to *exercise it.* At this stage, jurisdiction to determine jurisdiction has been exercised, and the higher courts will, in an appropriate case, restrain the lower court from acting in excess of jurisdiction [citations]."

Petitioner contends that by denial of the motion for summary judgment the court "has made a positive assumption of jurisdiction" and "is acting on the merits of the action." It appears to us that the jurisdictional question has not yet been determined.

Petitioner herein raised the jurisdictional question by way of a motion for summary judgment. The primary duty of the trial court in passing on a motion for a summary judgment is to discover whether there are presented by the affidavits any really triable issues, and not to pass on the issues themselves. (*California Lettuce Growers, Inc.* v. *Union Sugar Co.,* 45 Cal.2d 474, 488 [289 P.2d 785, 49 A.L.R.2d 496].) As stated in *Walsh* v. *Walsh,* 18 Cal.2d 439, 441 [116 P.2d 62],

"issue finding rather than issue determination is the pivot upon which the summary judgment law turns."

 In the instant case the trial court was not called upon to determine whether there was a triable issue so far as the actual merits of the action are concerned—only the jurisdictional question was presented, and this in turn rested upon the matter of exhaustion of internal remedies. If the trial court was correct in its determination that a triable issue of fact was presented as to whether Herrmann had an internal remedy available which he had failed to exhaust, then, under the familiar rules governing summary judgment proceedings, denial of the judgment was proper. We cannot anticipate that the court will incorrectly decide the matter and until the court makes a determination upon that basic issue, there is no ruling by it upon the jurisdictional question. In these circumstances, respondent court cannot be restrained from determining that question.

In *Noland* v. *Superior Court*, 26 Cal.App.2d 708, 709 [80 P.2d 76], this question is posed : "If the question of an inferior court's jurisdiction has been raised by an appropriate objection and remains undetermined in said court, will a writ of prohibition issue to restrain said court from taking further proceedings in the case before it?" The court answers this question as follows : "This question must be answered in the negative. The law is settled that, if the question of the jurisdiction of an inferior court has been raised by an appropriate objection, an appellate court will not issue a writ of prohibition to restrain further proceedings in the lower court until the inferior court has ruled upon the question which has been presented for its determination. (*Chester* v. *Colby,* 52 Cal. 516, 517; 21 Cal.Jur. (1925) 628; 50 Cor.Jur. (1930) 697.)" To the same effect see *Sayegh* v. *Superior Court,* 44 Cal.2d 814, 815 [285 P.2d 267] ; *Baird* v. *Superior Court,* 204 Cal. 408, 415 [267 P. 640] ; *Heinecke* v. *Superior Court,* 27 Cal.App.2d 480, 482 [81 P.2d 179].

The position of petitioner, however, appears to be that its uncontradicted affidavits established, as a matter of law, that real party in interest had an internal remedy which he failed to exhaust, thus the court lacks jurisdiction to proceed further other than to enter a judgment of dismissal.

 If, upon a motion for a summary judgment, "the facts as averred are accepted and create only an issue of law, the court is bound, under the provisions of [Code Civ. Proc.]

section 437c, to render a judgment on motion." (*Bank of America* v. *Casady,* 15 Cal.App.2d 163, 168 [59 P.2d 444].) However, a "[s]ummary judgment is proper only when the facts set forth by the affidavits of the moving party, if true, would sustain a judgment in his favor and the affidavits of the opposing party do not present legally triable issues of fact. . . . The facts must be set up with particularity in the affidavit, must be within the personal knowledge of the affiant, and the affiant must be competent to testify to these facts." (*Estate of Kelly,* 178 Cal.App.2d 24, 28 [2 Cal.Rptr. 634].) Although in the absence of counteraffidavits the court may accept as true the evidentiary facts averred by an affiant competent to testify (*Cone* v. *Union Oil Co., supra,* 129 Cal.App.2d 558, 562; *Coyne* v. *Krempels,* 36 Cal.2d 257, 263 [223 P.2d 244]), the absence of such counteraffidavits does not relieve the moving party from the burden of establishing the evidentiary facts of every element necessary to entitle him to the judgment. (*House* v. *Lala,* 180 Cal.App.2d 412, 416 [4 Cal.Rptr. 366].) "To satisfy the statutory requirement of 'particularity,' the movant's affidavit must state all the requisite evidentiary facts and not merely the ultimate facts. [Citations.] Moreover, neither conclusions of law nor conclusions of fact are sufficient to satisfy the statutory requirement. [Citations.]" (*House* v. *Lala, supra,* p. 416.)

The affidavit of Herrmann filed in opposition to the original motion, assuming that it was before the court upon the second hearing, did not create a conflict in the evidentiary facts. Petitioner's supporting affidavits and the documents attached thereto are uncontradicted and establish that the 1954 articles were superseded by those of 1958 which were in effect at the time Herrmann terminated his membership; that both the 1958 and the 1960 articles contain provisions for an appeal or appeals following the initial decision upon a protest. Any change made in the 1960 articles as to appellate procedure is immaterial, for it is undisputed that Herrmann failed to pursue and exhaust the remedies provided under either procedure.

The sole question, therefore, is whether the articles provide a remedy for the grievances alleged in the within complaint. This calls for an interpretation of the applicable provisions of the society's articles.

Section 6 of the 1958 articles provides for a writers' classification committee composed of composer and author members

of the board of directors, which "shall meet not less than once in each year for the purpose of classifying the members over which it shall have jurisdiction and to review and revise the classification of the respective members to the end that the allotment and apportionment of the royalties among the respective members shall be determined in a fair and nondiscriminatory manner as hereinafter provided." Further: "It shall be the duty of the Classification Committees to determine the status of each member of the Society with respect to the share of the royalties to which he is entitled and the distribution of royalties directed to be made by the Board of Directors. Such Committees in fixing the status of a member shall take into consideration the number, nature, character and prestige of works composed, written or published by such member, the length of time in which the works of the member have been a part of the catalogue of the Society, and popularity and vogue of such works, all to be determined in a fair and nondiscriminatory manner.

"Primary consideration shall be given to the performance of the compositions of members as indicated by objective surveys of performances . . . periodically made by or for the Society.

"Each such Committee shall set forth in writing the general basis of member classification which shall be made available to any member upon request."[1]

Section 6A thereof provides that any member "*aggrieved by his classification* may, after any distribution, file a protest in writing with the Classification Committee. . . ." The decision of the committee, after a hearing, "shall be conclusive and final unless the member shall file an appeal in the manner hereinafter prescribed." Section 6B provides for an appeal to the board of appeals, whose decision shall be deemed final unless either the member or the classification committee files a notice of appeal within 30 days. This further appeal is before an independent panel of arbitrators appointed as provided in the Rules of the American Arbitration Association. The panel, after considering any such appeal, may reverse the decision of the board of appeals and "*determine the classification of such member.*" The decision of the panel shall be conclusive and final. (Emphasis added.)[2]

---

[1] Section 6A of the 1960 articles contains identical provisions.

[2] Under the 1960 articles the grievance procedure is reduced to two steps: the original protest is made to a board of review, thus this board

Under the revised articles of 1960, any member "aggrieved by the *distribution* of the Society's revenues to such member, or by any rule or regulation of the Society directly affecting the distribution of the Society's revenues to such member" may file a protest. (Emphasis added.) These provisions *replace* the former protest as to "classification."

Real party in interest concedes that the new provision of the 1960 articles "clearly encompasses that type of protest and grievance which the real party in interest now alleges in his complaint. There is no reference to classification, no reference to anything else but protest with respect to distribution." He contends, however, that he is not to be governed by the 1960 articles; that he does not dispute his "classification" as determined by the classification committee; "that the grievance of said real party in interest has at all times been and still is that he has not received a fair distribution from the Petitioner and that Petitioner has wrongfully discriminated against him and his musical compositions"; that "the subject matter of the action filed in the Respondent Court was and is that the real party in interest has not received a fair and equitable accounting from Petitioner," and that these grievances are not within the scope of the grievance provisions of the 1958 articles. (It is apparent that Herrmann has abandoned the claim that his rights are governed by the 1954 articles.)

 " 'The constitution, rules and by-laws of a voluntary unincorporated association constitute a contract between the association and its members, and the rights and duties of the members as between themselves and in their relation to the association, in all matters affecting its internal government and the management of its affairs, are measured by the terms of such constitution and by-laws.' (*Dingwall* v. *Amalgamated Assn., supra,* p. 569 [4 Cal.App. 565 (88 P. 597)].)" (*Bush* v. *International Alliance of etc. Emp.,* 55 Cal.App.2d 357, 364 [130 P.2d 78].) At the time Herrmann became a member of the society, he agreed to abide by and be bound by the Articles of Association then in effect or as thereafter amended. The articles provide that they may be amended by vote of the qualified members in accordance with the procedure therein set forth. The legal effect of the changes

combines in a single administrative body the prior functions of the writers' classification committee and the board of appeals, with an appeal to the panel, as formerly.

in the 1960 articles was to affect the relations only of those who were then members or who thereafter contracted with the society. Herrmann's rights, privileges and duties with respect to royalties earned during the period of his membership are to be determined by the contract in effect at the time he terminated his membership, i.e., the 1958 articles.

In the affidavit of the president of ASCAP, in support of the motion, it is strongly contended that the 1960 articles ''actually governed the plaintiff's protest,'' but, that ''the relief sought herein could have been obtained under the prior Articles by protesting his classification.'' ■ The affidavit contains many averments which are but conclusions of law and affiant's belief as to the legal effect of the articles, the ultimate fact in issue and thus incompetent as evidence. (*Low* v. *Woodward Oil Co., Ltd.*, 133 Cal.App.2d 116, 121 [283 P.2d 720].) Other statements contained in this affidavit, as indicated in the excerpts therefrom set forth in the footnote,[3] clearly were offered as extrinsic evidence in aid to interpretation and application of ''classification'' as that term is used in the 1958 articles. ■ As stated in *Scott* v. *Sun-Maid Raisin Growers Assn.*, 13 Cal.App.2d 353, 359 [57

[3]''7. . . . Under the Society's rules, an appeal for a change in 'classification' is a demand for a change in a member's share of royalties and is precisely equivalent to a demand for an accounting. 8. The term 'classification' as used in the Society's Articles of Association and in the agreement between the Society and plaintiff dated January 28, 1944 (Exhibit 'B' to my affidavit of October 20, 1961) is a term which refers to a member's class for determining his share in royalty distributions. 9. Prior to 1950 each writer member was classified by the Writers Classification Committee—i. e., his catalog was evaluated and he was placed in a numerical or alphabetical class. All members in the same numerical or alphabetical class received the same amount of royalties. In 1950, the basis of classification was changed. The former numerical and alphabetical classes were abolished and the status of each writer member of the Society has since been determined on the basis of certain objective factors. Primary consideration is given to the performance of the compositions of each member as indicated by objective surveys of performances (Article XIV, Section 6A). In speaking of a writer member's class since 1950, it is understood that one is speaking of the number of points or credits that he has in certain of the four funds out of which writer distributions are paid. 10. A protest with respect to classification is, in effect, a demand for an accounting. The 1960 provisions of Article XIV, Section 6B expresses what was implicit before: that the Board or, on appeal, the Panel, may direct prompt payment to a member of all sums found to be due him. 11. From the foregoing facts, it is apparent that the 1960 Articles empowered the Board of Review, or the Panel on appeal, to grant the full relief sought by plaintiff herein. In addition, although not material to this action, it is also apparent that plaintiff could have obtained the relief sought herein by an appeal under the Articles prior to 1960.''

P.2d 148] : "When the meaning of the language of a contract is uncertain or doubtful and parol evidence is introduced in aid of its interpretation, the question of its meaning is *one of fact. . . .*" (Emphasis added.) In our opinion, it is not clear from the face of the articles that Herrmann could ask for and receive an accounting pursuant to sections 6A and 6B of the 1958 articles. We cannot say that these sections must as a matter of law be construed as contended by petitioner. That petitioner viewed the provisions thereof as being ambiguous and uncertain is evidenced by its offering extrinsic evidence as to the meaning thereof. In *Gibson* v. *De La Salle Institute,* 66 Cal.App.2d 609, 625 [152 P.2d 774], the court states: "Respondent contends that the words used mean one thing, and appellants contend that they mean another, and as the language used is not so clear, certain and unambiguous as to preclude the introduction of parol evidence to explain its meaning and the intention of the parties, in the light of the authorities hereinbefore cited the meaning of the words used became a question of fact which the trial court was precluded from determining on motion for summary judgment but was compelled to determine only 'after a full opportunity afforded all of the parties to the case to produce evidence of the facts, circumstances and conditions . . . and the conduct of the parties relative thereto.' (*Walsh* v. *Walsh, supra* [18 Cal.2d 439, 443 (116 P.2d 62)].)"

It is our conclusion that petitioner's affidavits are insufficient to establish its defense as a matter of law and that the summary judgment was properly denied. The trial court has jurisdiction to determine this issue.

The alternative writ is discharged. A peremptory writ of prohibition is denied.