[Civ. No. 30190.   Second Dist., Div. Three.   Mar. 2, 1966.]

TRIODYNE, INC., Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; RIDLEY & COMPANY, INC., et al., Real Parties in Interest.

Hillel Chodos for Petitioner.

No appearance for Respondent.

Ervin, Cohen & Jessup and Horace N. Freedman for Real Parties in Interest.

FRAMPTON, J. pro tem.*—Petitioner, who is the defendant and cross-complainant in a pending action, seeks a writ of mandate to compel respondent court to set aside its order of December 29, 1965, granting the motion of cross-defendants to strike the amended fourth count of its cross-complaint.

The action was commenced by Ridley and Company, Inc., a California corporation, against Macarr, a California corporation (now known as Triodyne, Inc. and hereinafter referred to as "Triodyne"), based upon a written contract entered into between Ridley and Triodyne on July 11, 1963. Pursuant to the agreement Ridley was granted "the exclusive sales rights" for a concrete pumping device of Triodyne. Among other things, the parties agreed as follows: Triodyne agreed to manufacture and sell exclusively to Ridley its Model #1-35 concrete pump; Ridley agreed, commencing in August 1963, to purchase not less than five pumps each calendar month. Triodyne was to deliver the first pump no later than July 17, 1963, the second on August 5, 1963, and the third, fourth and fifth no later than August 26, 1963. Ridley agreed to purchase a minimum of 30 additional pumps by December 31, 1963, and Triodyne agreed to deliver no less than four pumps in addition to the initial five pumps by August 26, 1963, with an additional 15 pumps during September 1963 and in each month thereafter. Ridley agreed to order five pumps upon execution of the agreement at a purchase price of $9,500 each, and to pay to Triodyne $23,750

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

representing 50 percent of the total price of the five pumps. In addition to the purchase price of the pumps Ridley agreed to pay within 20 days of delivery thereof the sum of $1,000 per pump for the 40 pumps purchased after the first 20 pumps as the purchase price for the exclusive sales rights of the Macarr pump granted by the agreement.

It is alleged in the complaint that plaintiff paid to defendant the sum of $23,750; that only one pump was delivered, upon delivery of which plaintiff paid to defendant the sum of $4,250, being the balance of the purchase price of said pump less the sum of $500 which it was agreed would be deposited into an escrow account as a reserve against repair expense.

Plaintiff alleges breach of an express warranty, failure of defendant to correct said default, and an offer to restore said pump to defendant. It is also alleged that on October 25, 1963, defendant notified plaintiff that it would not deliver the pumps specified in the agreement and that it considered the agreement terminated pursuant to certain provisions thereof. Plaintiff seeks return of the $28,000 paid to defendant, damages for the alleged breach and repudiation of the contract, plus recovery upon a common count for materials and labor furnished to defendant.

Defendant filed an answer and counterclaim. In addition, a cross-complaint was filed containing four counts. Cross-defendants' motion to strike Count I thereof (declaratory relief against Ridley) was denied; Count II (for injunctive relief) was voluntarily dismissed by cross-complainant; a general demurrer to Count III (seeking damages against Ridley for breach of contract) was overruled. A general demurrer to Count IV was sustained with leave to amend. Count IV only is involved in this proceeding. In this count cross-complainant alleged that it was induced to execute the said agreement of July 11, 1963, by reason of the false representations of cross-defendants, Ridley and Company, Inc. and one Richard L. Klosterman, and sought compensatory damages of $100,000 plus exemplary damages in a like amount.[1] Upon demurrer

---

[1]Count four of the original cross-complaint contains these allegations: Par. II: ''In order to induce MACARR to enter into the said Agreement, the defendants . . . represented to MACARR that they were capable of conducting a national and international sales program of the MACARR pump, and that they were willing to undertake such a sales program; and further represented to MACARR that they intended to perform each of their obligations under the said Agreement, and to use their best efforts in furthering the sales of MACARR's pump.''
Par. III: ''The said representations were false and fraudulent, as the said defendants well knew.''
Par. IV: ''In reliance on the said representations of the defendants,

thereto, it was argued by cross-defendants that the "out-of-pocket" rule of Civil Code, section 3343,[2] was the exclusive measure of damages in a fraud case (citing the leading case of *Bagdasarian* v. *Gragnon,* 31 Cal.2d 744 [192 P.2d 935]) and that said count was deficient by reason of its failure to allege the proper measure of damages.

An amended fourth count was filed, as to which cross-defendants, after taking the depositions of certain officers of Triodyne, filed a motion to strike "on the ground that it is sham and irrelevant." On December 29, 1965, the motion was granted, the minute order of that date reading: "The deposition indicates that the 'loss of profit' rule is being used as the theory upon which to base an evaluation to substantiate an 'out-of-pocket' claim. This is in effect circumventing the rule of damages set forth in CC 3343 and can be reached on a motion to strike." The within petition was then filed in this court by which cross-complainant seeks to annul said order.

Pertinent portions of the amended fourth count are set forth in the footnote.[3] In support of the motion to strike,

---

MACARR entered into the said Agreement, and abandoned any efforts to sell its pumps to other persons."
Par. V: "As a direct and proximate [result] of the fraud of the defendants, as hereinabove alleged, MACARR has been prevented from manufacturing and selling pumps, and has thereby lost profits which it would otherwise have earned, all to its damage in the sum of One Hundred Thousand ($100,000.00) Dollars."

[2] "One defrauded in the purchase, sale or exchange of property is entitled to recover the difference between the actual value of that with which the defrauded person parted and the actual value of that which he received, together with any additional damage arising from the particular transaction.

"Nothing herein contained shall be deemed to deny to any person having a cause of action for fraud or deceit any legal or equitable remedies to which such person may be entitled." (Civ. Code, § 3343.)

[3] After alleging more specifically the representations made by cross-defendants, that said representations "were false and fraudulent as said defendants well knew; and the said promises were made by the said defendants without any intention of performing them," the amended count contains these allegations:
Par. V: "That said fraudulent representations and promises were made prior to the execution by the parties of the agreement attached hereto, for the purpose of inducing TRIODYNE to divest itself of, and grant to, RIDLEY and KLOSTERMAN, the exclusive right to sell MACARR pumps, from July 11, 1963, and during the term of the agreement, subject to the provisions of the said agreements respecting termination. At all times pertinent to this action, the value of said exclusive right to sell MACARR pumps was at least $100,000.00."
Par. VI: "Prior to entering into the said agreements . . . TRIODYNE had been engaged in the manufacture and sale of pumps, and had been ne-

cross-defendants argued that ''Although defendant's cross-complaint as amended, appears on its face to conform to the correct theory of pleading damages, the declaration of Horace N. Freedman clearly shows that, in fact, defendant's alleged damages are still erroneously premised on the benefit-of-the-bargain loss rule.'' The declaration of Mr. Freedman makes reference to a portion of the testimony of an officer of Triodyne given upon the taking of his deposition in October 1965.[4] The claim of ''sham'' also is premised upon counsel's statement that ''The court's basis for sustaining Plaintiff's demurrer to the fourth count was that Defendant had improperly pleaded damages in that such damages were improperly based on the benefit of the bargain rule instead of the out-of-pocket rule.'' Accordingly, it was argued that although the amended fourth count purports to allege damages based on the out-of-pocket rule, the extrinsic evidence shows that cross-complainant is still claiming ''loss of expected profits or benefit of the bargain damages''; that in fact there was no substantial amendment or attempt to remedy the defects which were pointed out to cross-complainant when the demurrer was sustained, citing *Lincoln* v. *Didak*, 162 Cal. App.2d 625 [328 P.2d 498]; *Tostevin* v. *Douglas*, 160 Cal. App.2d 321 [325 P.2d 130]; and *Neal* v. *Bank of America*, 93 Cal.App.2d 678 [209 P.2d 825].

gotiating with numerous members of the public for the sale of MACARR pumps in large quantities. In reliance on the fraudulent representations and promises of RIDLEY and KLOSTERMAN, TRIODYNE entered into the said agreements; and granted the said exclusive right to sell MACARR pumps to RIDLEY and KLOSTERMAN; and divested itself of the exclusive right to sell said MACARR pumps, and abandoned its efforts to sell its pumps to other persons. In return for the said grant of exclusive rights to sell MACARR pumps, TRIODYNE received only the said fraudulent promises and representations of RIDLEY and KLOSTERMAN, which promises and representations have never had, at any time pertinent to this action, any value whatsoever.''

Par. VII: ''As a direct and proximate result of the fraud of RIDLEY and KLOSTERMAN, as hereinabove alleged, TRIODYNE was prevented from manufacturing and selling pumps from July 11, 1963, until October 25, 1963, and has thereby been damaged in the sum of $100,000.00.''

[4] He was asked: ''Q. How did you arrive at a value of a hundred thousand dollars for the value of the exclusive right to sell Macarr pumps? . . . THE WITNESS: . . . based on the contract amounts over a period that we had anticipated this thing would run—and plus everything else included—we felt that we would make at least a hundred thousand dollars. . . .

''Q. So you anticipated or expected profits during that contract period [from July 11 to October 25, 1963] of $100,000; is that how you arrived at the value of a hundred thousand in Paragraph 5? A. Yes, basically.''

He testified that the $100,000 referred to in the amended count was the same $100,000 referred to in the original complaint.

Cross-complainant in opposing the demurrer contended that the damages claimed in the fourth count were based on the provisions of Civil Code, sections 1709, 1710 and 3333, and that section 3343 had no application to the instant case. In opposition to the subsequent motion to strike, cross-complainant asserted that cross-defendants' premise as to the basis of the court's ruling upon the demurrer was erroneous; that ''The demurrer was sustained on the ground that it could not be ascertained from the allegations of the fourth count (which were admittedly rather sparse) what measure of damages would be applicable. On this basis, defendant was ordered to amend.'' Although cross-complainant again argued that section 3343 has no application, it was also argued that by the allegations of the amended count it did not seek ''to obtain the benefit of any bargain it made with plaintiff,'' that the damages sought ''have nothing to do with the money defendant would have received from plaintiff if plaintiff had performed according to its contract. Rather, it constitutes the money which defendant would have received from *others*, if it had not been induced by plaintiff's fraud to grant plaintiff an exclusive franchise for the concrete pumps, and abandon its efforts to sell pumps to others during the period from July 11, 1963 to October 25, 1963.'' In supplemental points and authorities it was argued that ''cross-complainant gave up a property right, which it alleges (and will prove at the trial) was worth at least $100,000.00. Obviously, the 'value' of an exclusive franchise must be *measured* by the profits which could have been derived from a reasonable exploitation of that franchise during the period involved.'' It was also urged, with reference to the depositions, that the inability of cross-complainant's witnesses ''to fashion a legal argument relating to damages is of no significance whatever, and certainly provides no ground for a motion to strike their claim.''

We are concerned only with the allegations concerning damages; cross-defendants have not contended that the allegations as to the fact and substance of the fraud and reliance thereon to cross-complainant's detriment are otherwise insufficient, that they are sham, or that they cannot be proved. It is apparent from the record that cross-complainant was mistaken or uncertain as to the proper measure of damages. ■ However, it is the general rule that ''where the facts stated in the complaint show that the plaintiff is entitled to damages of some sort, it is not a fatal

error that the pleader has mistaken the rule by which such damages should be determined." (*Warfield* v. *Basso,* 62 Cal. App. 47, 49 [216 P. 48].) In *Hartzell* v. *Myall,* 115 Cal. App.2d 670, 677-678 [252 P.2d 676], the court states: "Appellant evidently has failed to distinguish between the remedy or relief which the law affords for the invasion of a right, and the cause of action or ground for the relief. Thus in an action for fraud and deceit a cause of action is stated when the facts constituting fraud are alleged and a resulting injury is pleaded. Damages constitute the relief which the law affords for the invasion of the right and the extent of the relief depends upon the proof, the relief being limited by the measure of the damage which the law prescribed. This measure need not be pleaded, nor is the plaintiff required to state in his pleading the manner in which he computes the amount of the damages he demands. (15 Am.Jur. 747.) These are matters which are to be regulated upon the trial in accordance with prescribed legal limitations." (See also, *Eatwell* v. *Beck,* 41 Cal.2d 128, 136 [257 P.2d 643], and cases there cited; *Bice* v. *Stevens,* 136 Cal.App.2d 368, 373-374 [289 P.2d 95].) ▇▇ In the light of these authorities, the allegations of the amended fourth count of the cross-complaint, at least in the absence of a special demurrer, are sufficient. ▇▇ "Irrevelant and redundant matter inserted in a pleading may be stricken by the court. (Code Civ. Proc., § 453.) But a motion to strike cannot be made to serve the purpose of a special demurrer. Where a motion to strike is so broad as to include relevant matters, the motion should be denied in its entirety." (*Hill* v. *Wrather,* 158 Cal.App.2d 818, 823 [323 P.2d 567].)

▇▇ Insofar as the motion to strike was upon the asserted ground of irrelevancy, it was not directed to any particular allegations and no showing of irrelevancy was made; thus the motion must be considered as one to strike or dismiss the entire count on the basis that it was sham.

▇▇ Upon the making of a motion to dismiss as sham a pleading which is good on its face, supported by facts outside the pleadings, the court should treat the motion as one for summary judgment and decide it on the basis of the requirement of section 437c of the Code of Civil Procedure. (*Pianka* v. *State of California,* 46 Cal.2d 208, 211-212 [293 P.2d 458]; *Lavine* v. *Jessup,* 48 Cal.2d 611, 614, fn. 2 [311 P.2d 8]; *State Market of Avenal, Inc.* v. *Superior Court,* 172 Cal.App. 2d 517, 520 [342 P.2d 325]; *Callahan* v. *Chatsworth Park,*

*Inc.*, 204 Cal.App.2d 597, 599 [22 Cal.Rptr. 606]; *Lerner* v. *Ehrlich*, 222 Cal.App.2d 168, 171-172 [35 Cal.Rptr. 106].)

So viewed, it is our conclusion that the affidavit in support of the motion to strike is insufficient to show that the allegations are sham or false in fact, or that cross-complainant cannot prove any damages under appropriate legal rules to be applied by the court. This is not a situation where cross-complainant has failed to amend the previous pleading, has omitted factual allegations of the original count, or has set up a new or different cause of action, within the purview of the cases cited by cross-defendants, *supra*; nor is the complaint fatally defective upon its face. With regard to the claim of cross-defendants to the effect that there was no good faith attempt to correct errors previously pointed out by the court upon the sustaining of the general demurrer, there were, as pointed out above, conflicting versions by respective counsel as to the basis of the trial court's ruling. However, if as contended by cross-defendants, the demurrer was sustained solely upon the ground that the wrong measure of damages was asserted, there were no defects in the previous pleading to be remedied for, as shown above, the cross-complaint was not vulnerable to a general demurrer on that ground. Furthermore, it is conceded that the pleading was changed to allege the proper measure of damages. The question is whether the deposition testimony of Mr. Carl, an officer of Triodyne, shows that this amendment was false in fact and not pleaded in good faith.

The witness was asked how he arrived at the figure of $100,000 as the value of the exclusive right and he stated his theory. We cannot conclude that the only interpretation of his answers must be that Mr. Carl had in mind anticipated profits representing only the "benefit of the bargain" with Ridley, rather than a method of computing out-of-pocket or consequential damages allowed by section 3343. It was argued by cross-defendants upon the motion to strike that "In truth and in fact there was no value to defendant's alleged exclusive right to sell other than the profits it anticipated making under its contract with plaintiff." No facts are set forth in the supporting affidavit to sustain this argument. The testimony of Mr. Carl does not establish that the exclusive right had no value or that damages were not sustained. We do not presume to express an opinion as to the merits of the fourth count in any respect, nor do we determine the correctness of the witness's theory. Suffice it to say that his method of computing

damages is not necessarily inconsistent with the allegations of the complaint, and evidence may be offered which will afford a proper basis for the allowance of damages. If upon the trial evidence is offered which is not competent, cross-defendants may object thereto and insist that damages be proved by the correct legal standards. (Cf. *Durkee* v. *Chino Land & Water Co.*, 151 Cal. 561, 569-570 [91 P. 398].) In *Byer* v. *Arguello*, 96 Cal.App.2d 92 [214 P.2d 556], deposition testimony actually controverted the averments of the complaint. In that case plaintiff alleged that her child was bitten by dogs belonging to defendants Arguello and by a dog belonging to defendants Kramer. In his deposition plaintiff testified that he did not contend that the Kramer dog bit the child at any time. He stated that his theory of Kramers' liability was that their dog was in heat, and it was negligence for them to allow the animal to go at large, an attraction for male dogs in the neighborhood where the Kramers and the child lived. In reversing a judgment of dismissal upon the ground that the action was sham and fictitious, the court stated (p. 93-94):

"From a consideration of the record herein, we are satisfied that the pleadings in this action present triable issues. We are equally satisfied that our holding on the motion to dismiss (*Byer* v. *Arguello, supra* [94 Cal.App.2d 110 (210 P.2d 328)] is determinative of this appeal on the merits. In the cited case we said (p. 111):

" 'Courts have inherent power to dismiss actions upon the grounds that they are fictitious or sham. Such a motion to dismiss is proper practice, but in each case the question arises whether the specific facts presented to the court constitute grounds for an order of dismissal. (*Cunha* v. *Anglo-California Nat. Bank*, 34 Cal.App.2d 383 [93 P.2d 572].)

" 'In the present case the complaint specifically alleges that the Kramer dog killed the child. While it is true that the child's father in his deposition testified to facts contrary to the allegations of the complaint which he verified, it is better practice to dispose of issues by trial. Before a motion to dismiss may be granted the record must disclose that no relief can be granted to the plaintiff. (*People* v. *Nixon*, 34 Cal.2d 234 [209 P.2d 385].) From the complaint and the affidavits here under consideration, it cannot be said that beyond peradventure of doubt no cause of action can be proven against the Kramers.

" 'Nothing herein contained is to be contrued as approving plaintiff's far-fetched theory that a dog in heat not kept within

bounds proves negligent liability of the owner for the acts of other dogs attracted to the neighborhood. This decision is based upon the fact that the complaint avers that the Kramer dog actually killed the child, and that while this averment is controverted by the testimony of the plaintiff on deposition, upon trial of the issue the plaintiff may be able to present testimony to support the complaint. To hold otherwise would be to open a veritable Pandora's box of motions to dismiss actions, based upon statements in depositions contrary to averments in complaints.' ''

A deposition may be used in support of a motion for a summary judgment (*Vallejo* v. *Montebello Sewer Co. Inc.*, 209 Cal.App.2d 721, 734 [26 Cal.Rptr. 447]), but the deposition in this case, which is the only extrinsic evidence upon which cross-defendants rely, is factually insufficient upon which to base a motion to dismiss or strike for sham.

In the circumstances of this case we believe the remedy by appeal to be inadequate and that the rights of all the parties should be determined in a single action.

Let a peremptory writ of mandate issue requiring respondent court to reinstate petitioner's amended fourth count of its cross-complaint filed in action number 827840 in said court.

Ford, J., and Kaus, J., concurred.

The petition of the real parties in interest for a hearing by the Supreme Court was denied April 27, 1966.