[L.A. No. 29836. In Bank. June 24, 1971.]

MILES A. VESELY, Plaintiff and Appellant, v.
WILLIAM A. SAGER, Defendant and Respondent.

## COUNSEL

Hafif & Shernoff and Stephen L. Odgers for Plaintiff and Appellant.

Murchison, Cumming, Baker & Velpmen and Ronald R. McQuoid for Defendant and Respondent.

## OPINION

**WRIGHT, C. J.**—In this case we are called upon to decide whether civil liability may be imposed upon a vendor of alcoholic beverages for providing alcoholic drinks to a customer who, as a result of intoxication, injures a third person. The traditional common law rule would deny recovery on the ground that the furnishing of alcoholic beverages is not the proximate cause of the injuries suffered by the third person. We have determined that this rule is patently unsound and that civil liability results when a vendor furnishes alcoholic beverages to a customer in violation of Business and Professions Code section 25602 and each of the conditions set forth in Evidence Code section 669, subdivision (a), is established.

Since neither issue is presented in the instant case, we do not decide whether a noncommercial furnisher of alcoholic beverages may be subject to civil liability under section 25602 or whether a person who is served alcoholic beverages in violation of the statute may recover for injuries suffered as a result of that violation. Additionally, we reaffirm our decision in *Pianka* v. *State of California* (1956) 46 Cal.2d 208 [293 P.2d 458], and hold that a nonstatutory speaking motion to strike or dismiss a complaint should be treated as a motion for summary judgment. (Code Civ. Proc., § 437c.)

Plaintiff Miles Vesely brought this action to recover for personal injuries and property damage sustained in an automobile accident. The only defendant involved on this appeal is William A. Sager, individually and doing business as the Buckhorn Lodge. Other defendants are James G. O'Connell, the driver of the vehicle which collided with plaintiff's automobile, and Earl Dirks, the owner of the car driven by O'Connell. The facts which are alleged in the complaint and which we must accept for the purposes of this appeal[1] are as follows:

Defendant Sager owned and operated the Buckhorn Lodge, a roadhouse located near the top of Mount Baldy in San Bernardino County, and was engaged in the business of selling alcoholic beverages to the general public. Beginning about 10 p.m. on April 8, 1968, Sager served or permitted defendant O'Connell to be served large quantities of alcoholic beverages. At the time the beverages were served, Sager knew that O'Connell was becoming excessively intoxicated and that O'Connell was "incapable of exercising the same degree of volitional control over his con-

---

[1]*Endler* v. *Schutzbank* (1968) 68 Cal.2d 162, 165 [65 Cal.Rptr. 297, 436 P.2d 297]; *Rosenfield* v. *Malcolm* (1967) 65 Cal.2d 559, 563 [55 Cal.Rptr. 505, 421 P.2d 697]; *Stanton* v. *Dumke* (1966) 64 Cal.2d 199, 201 [49 Cal.Rptr. 380, 411 P.2d 108]; *Stigall* v. *City of Taft* (1962) 58 Cal.2d 565, 567-568 [27 Cal.Rptr. 441, 375 P.2d 289].

sumption of intoxicants as the average reasonable person." Sager also knew that the only route leaving the Buckhorn Lodge was a very steep, winding, and narrow mountain road and that O'Connell was going to drive down that road. Nevertheless, Sager continued to serve O'Connell alcoholic drinks past the normal closing time of 2 a.m. until 5:15 a.m. on April 9. After leaving the lodge, O'Connell drove down the road, veered into the opposite lane, and struck plaintiff's vehicle. The complaint also alleges that O'Connell drove the automobile with the consent, permission, and knowledge of the remaining defendants, that each defendant was the employee and agent of the other defendants, and that each of the defendants "was at all times acting within the purpose and scope of said agency and employment."

Defendant Sager demurred to the complaint on the ground that a "seller of intoxicating liquors is not liable for injuries resulting from intoxication" of a buyer thereof, and he moved to strike as sham those allegations of the complaint which alleged that O'Connell drove the automobile with the permission of the other defendants and that each defendant was the employee and agent of the remaining defendants. In support of the motion to strike, Sager submitted his declaration in which he stated that O'Connell and Dirk "were not in [his] employment on the date of the accident" and that he never had any ownership interest or any other interest in the automobile driven by O'Connell.

The trial court sustained the demurrer without leave to amend, granted the motion to strike, and dismissed the complaint as to defendant Sager. Plaintiff appeals.[2]

Until fairly recently, it was uniformly held that an action could not be maintained at common law against the vendor of alcoholic beverages for furnishing such beverages to a customer who, as a result of being

---

[2]Plaintiff's notice of appeal states that the appeal is from the order sustaining the demurrer without leave to amend and from the order granting the motion to strike, both of which are nonappealable orders. (*Daar* v. *Yellow Cab Co.* (1967) 67 Cal.2d 695, 699 [63 Cal.Rptr. 724, 433 P.2d 732]; *Lavine* v. *Jessup* (1957) 48 Cal.2d 611, 614 [311 P.2d 8]; *Henry* v. *Law Firm of Hillyer, Crake, & Irwin* (1960) 183 Cal.App. 2d 798, 799 [6 Cal.Rptr. 877]; 3 Witkin, Cal. Procedure (1954) Appeal, § 19.) After the notice of appeal was filed, the trial court entered an order dismissing the action as to defendant Sager. Since no prejudice would accrue to defendant Sager, we treat the notice of appeal as applying to the order dismissing the action. (See *Vibert* v. *Berger* (1966) 64 Cal.2d 65, 68-69 [48 Cal.Rptr. 886, 410 P.2d 390]; *Evola* v. *Wendt Construction Co.* (1958) 158 Cal.App.2d 658, 660-661 [323 P.2d 158].) In addition we treat the notice as having been filed after the entry of the order of dismissal in accordance with rule 2(c) of the California Rules of Court. (See *Windsor Mills* v. *Richard B. Smith, Inc.* (1969) 272 Cal.App.2d 336, 339 [77 Cal. Rptr. 300]; *Levy* v. *Bellmar Enterprises* (1966) 241 Cal.App.2d 686, 688, fn. 1 [50 Cal.Rptr. 842]; *Evola* v. *Wendt Construction Co., supra,* 158 Cal.App.2d at pp. 660-661.)

intoxicated, injured himself or a third person.[3] (*Collier* v. *Stamatis* (1945) 63 Ariz. 285 [162 P.2d 125]; *Howlett* v. *Doglio* (1949) 402 Ill. 311 [83 N.E.2d 708, 6 A.L.R.2d 790]; *State* ex rel. *Joyce* v. *Hatfield* (1951) 197 Md. 249 [78 A.2d 754]; *Seibel* v. *Leach* (1939) 233 Wis. 66 [288 N.W. 774]; see 45 Am.Jur.2d, Intoxicating Liquors, § 553; 48 C.J.S., Intoxicating Liquors, § 430; Joyce on Intoxicating Liquors, § 421; Comment, *Dramshop Liability—A Judicial Response* (1969) 57 Cal.L.Rev. 995, 1000-1001; Annot. 130 A.L.R. 357.) The rationale for the common law rule was that the consumption and not the sale of liquor was the proximate cause of injuries sustained as a result of intoxication. (See, *Pratt* v. *Daly* (1940) 55 Ariz. 535, 538 [104 P.2d 147, 130 A.L.R. 341]; 45 Am.Jur.2d, Intoxicating Liquors, § 553.) "The rule was based on the obvious fact that one cannot be intoxicated by reason of liquor furnished him if he does not drink it." (*Nolan* v. *Morelli* (1967) 154 Conn. 432 [226 A.2d 383]; 45 Am.Jur.2d, Intoxicating Liquors, *supra*, at p. 853; see *King* v. *Henkie* (1886) 80 Ala. 505, 511; *Pratt* v. *Daly, supra,* 55 Ariz. 535, at p. 538.) The common law rule has been substantially abrogated in many states by statutes which specifically impose civil liability upon a furnisher of intoxicating liquor under specified circumstances. (See Comment, 57 Cal.L.Rev. 995, 996, fn. 6, listing the 20 states that have such statutes.) California, however, has not enacted similar legislation.

The common law doctrine that the furnishing of alcoholic beverages is not the proximate cause of injuries resulting from intoxication was first mentioned in this state in *Lammers* v. *Pacific Electric Ry. Co.* (1921) 186 Cal. 379 [199 P. 523]. In that case the defendant railroad ejected the plaintiff, a passenger who was unable to find his fare, from one of its trains while the plaintiff was quite helpless from intoxication and mental deficiency. The plaintiff, who apparently had been struck by a train, was discovered more than six hours later, lying badly maimed on another set of railroad tracks some three quarters of a mile from the point where he had been ejected from the defendant's train. The court held that the

---

[3]Several exceptions have been created to this general rule. Thus, it has been held that a spouse can maintain an action for loss of consortium against a distributor of alcoholic beverages who sells intoxicants to his or her spouse, knowing that the latter lacks control over his or her consumption of intoxicants (*Pratt* v. *Daly* (1940) 55 Ariz. 535 [104 P.2d 147, 130 A.L.R. 341]), or after repeated warnings not to furnish alcoholic beverages to such spouse (*Swanson* v. *Ball* (1940) 67 S.D. 161 [290 N.W. 482]). It has also been held that an action can be maintained for death or injuries sustained by a customer who has been induced to drink alcoholic beverages when his "mental faculties [were] suspended by intoxication." (*McCue* v. *Klein* (1883) 60 Tex. 168; *Ibach* v. *Jackson* (1934) 148 Ore. 92 [35 P.2d 672].) In addition it was held that a master could bring an action against a person who sold liquor to a slave without the master's consent. (*Skinner* v. *Hughes* (1850) 13 Mo. 440; *Harrison* v. *Berkley* (1847) 32 S.C.L. (1 Strobh) 525.)

defendant's action in ejecting the plaintiff from its train was not the proximate cause of the injuries sustained thereafter. In dictum the court stated that "the sale of the whiskey to the plaintiff would come nearer being a proximate cause of the injury than the ejection from the railway train. . . . [Y]et it has been uniformly held in the absence of statute to the contrary that the sale of intoxicating liquor is not the proximate cause of injuries subsequently received by the purchaser because of his intoxication. (Joyce on Intoxicating Liquors, sec. 421; *Cruse* v. *Aden*, 127 Ill. 231, 234 [3 L. R. A. 327, 20 N. E. 73].)" (186 Cal. at p. 384.)

The dictum in *Lammers* was relied upon in *Hitson* v. *Dwyer* (1943) 61 Cal.App.2d 803 [143 P.2d 952]. There the plaintiff alleged that while obviously intoxicated and sitting on a movable stool at the defendant's bar, he was served alcoholic beverages in violation of section 62 of the Alcoholic Beverage Control Act. (Now Bus. & Prof. Code, § 25602.) The plaintiff claimed that as a result of the wrongful sale of intoxicants, he fell from the stool; that the defendants negligently dragged him from his position on the floor; and that the fall or the dragging or both, caused him to suffer various bodily injuries. The court rejected the plaintiff's contention that the defendants' violation of the Alcoholic Beverage Control Act constituted negligence per se. The court reasoned that the statute was not enacted for the purpose of protecting an obviously intoxicated person who had been served alcoholic beverages in violation of its provisions. Moreover, the court stated that violation of the act could not result in liability since "the proximate cause [of injury resulting from intoxication] is not the wrongful sale of the liquor but the drinking of the liquor so purchased." (61 Cal.App.2d at p. 809.)

Thereafter, in *Fleckner* v. *Dionne* (1949) 94 Cal.App.2d 246 [210 P.2d 530], the court affirmed a judgment for the defendant tavern keeper in an action by a person who had been injured in an automobile accident caused by a minor who had purchased alcoholic beverages in the defendant's establishment. The complaint alleged that the defendant knew that the purchaser was a minor; that the defendant sold liquor to the minor "while he was already under the severe influence of intoxicating liquors"; that the defendant knew that the minor had an automobile on the premises which he was going to drive; and that defendant knew that the driving of the car by the minor while intoxicated would result in harm to others on the highway. The trial court sustained a demurrer and entered judgment for the defendant. In affirming the judgment, the court relied upon the dictum in *Lammers,* the decision in *Hitson,* and various out-of-state decisions.

Finally, in *Cole* v. *Rush* (1955) 45 Cal.2d 345 [289 P.2d 450, 54

A.L.R.2d 1137], this court held that the wife and children of a customer who died as the result of injuries sustained in a barroom brawl could not maintain a wrongful death action against the owners of a tavern for furnishing intoxicating liquor to the decedent. The complaint alleged that the decedent had patronized the defendants' tavern on numerous occasions; that the decedent was well-known to the defendants; and that the defendants knew that the decedent was "normally of quiet demeanor but that when . . . intoxicated he became belligerent, pugnacious, and quarrelsome." The complaint further alleged that the plaintiff widow on numerous occasions had requested that the defendants not sell the decedent sufficient liquor to allow him to become intoxicated; that the defendants furnished the decedent with liquor until and after he became intoxicated; and that as a result of being intoxicated, the decedent became belligerent, engaged in a brawl, and died from injuries sustained in a fall during the fight. In ruling that the complaint failed to state a cause of action, the court noted the existing common law rule and discussed the decisions in *Lammers, Hitson,* and *Fleckner.* It concluded that "as to a competent person it is the voluntary consumption, not the sale or gift, of intoxicating liquor which is the proximate cause of injury from its use." (*Cole* v. *Rush, supra,* 45 Cal.2d at p. 356.) The court also held that the plaintiffs were barred from recovery under the wrongful death act by the decedent's contributory negligence in voluntarily consuming the liquor furnished by the defendants, and stated that any change in the common law rule concerning a tavern keeper's liability under such circumstances should be made by the Legislature.

Since *Cole,* various courts in other jurisdictions have reevaluated the common law rule that the vendor of intoxicating liquor cannot be held liable for injuries resulting from intoxication, and in particular the rule that the seller cannot be held liable for furnishing alcoholic beverages to a customer who injures a third person. A substantial number, if not a majority, have decided that the sale of alcoholic beverages may be the proximate cause of such injuries and that liability may be imposed upon the vendor in favor of the injured third person. (*Waynick* v. *Chicago's Last Department Store* (7th Cir. 1959) 269 F.2d 322, cert. den. 362 U.S. 903 [4 L.Ed.2d 554, 80 S.Ct. 611]; *Deeds* v. *United States* (D. Mont. 1969) 306 F.Supp. 348; *Prevatt* v. *McClennan* (Fla.App. 1967) 201 So.2d 780; *Colligan* v. *Cousar* (1963) 38 Ill.App.2d 392 [187 N.E.2d 292]; *Elder* v. *Fisher* (1966) 247 Ind. 598 [217 N.E.2d 847]; *Pike* v. *George* (Ky.App. 1968) 434 S.W.2d 626; *Adamian* v. *Three Sons, Inc.* (1968) 353 Mass. 498 [233 N.E.2d 18]; *Rappaport* v. *Nichols* (1959) 31 N.J. 188 [156 A.2d 1]; *Berkeley* v. *Park* (1965) 47 Misc.2d 381 [262 N.Y.S.2d 290]; *Jardine* v. *Upper Darby Lodge No. 1973, Inc.* (1964) 413

Pa. 626 [198 A.2d 550]; *Mitchell* v. *Ketner* (1965) 54 Tenn.App. 656 [393 S.W.2d 755]; cf. *Davis* v. *Shiappacossee* (Fla. 1963) 155 So.2d 365; *Ramsey* v. *Anctil* (1965) 106 N.H. 375 [211 A.2d 900]. Contra, *Carr* v. *Turner* (1965) 238 Ark. 889 [385 S.W.2d 656]; *Hull* v. *Rund* (1962) 150 Colo. 425 [374 P.2d 351]; *Cowman* v. *Hansen* (1958) 250 Ia. 358 [92 N.W.2d 682]; *Meade* v. *Freeman* (1969) 93 Idaho 389 [462 P.2d 54]; *Lee* v. *Peerless Ins. Co.* (1966) 248 La. 982 [183 So.2d 328]; *Hall* v. *Budagher* (1966) 76 N.M. 591 [417 P.2d 71]; *Hamm* v. *Carson City Nugget, Inc.* (1969) 85 Nev. 99 [450 P.2d 358]; *Garcia* v. *Hargrove* (1966) 46 Wis.2d 724 [176 N.W.2d 566]; *Parsons* v. *Jow* (Wyo. 1971) 480 P.2d 396; cf. *Nolan* v. *Morelli* (1967) 154 Conn. 432 [226 A.2d 383].)

The two leading cases abrogating or modifying the common law rule are *Waynick* v. *Chicago's Last Department Store, supra,* 269 F.2d 322, and *Rappaport* v. *Nichols, supra,* 31 N.J. 188. In *Waynick* the plaintiffs, residents of Michigan, brought an action for personal injuries against three Illinois tavern keepers for selling liquor to two Illinois residents who drove an automobile into Michigan and there collided with a vehicle in which the plaintiffs were riding. The sale by each defendant was alleged to have been made in violation of an Illinois criminal statute prohibiting the sale of liquor to an intoxicated person. Although both Michigan and Illinois had dram shop acts expressly providing for civil liability, the court concluded that neither applied to the case before it because the state courts had decided that the statutes did not apply extraterritorially. Nevertheless, the court held that the complaint stated a cause of action under the common law of Michigan. The court determined that the Illinois statute prohibiting the sale of liquor to an intoxicated person was enacted "for the protection of any member of the public who might be injured or damaged as a result of the drunkenness to which the particular sale contributes" and that the statute imposed a duty upon the sellers of alcoholic beverages in favor of those who might be injured as a result of a violation of the statute. Without analyzing at length the question of proximate cause, the court held that "under the facts appearing in the complaint, the tavern keepers are liable in tort for the damages and injuries sustained by plaintiffs, as a proximate result of the unlawful acts of the former." (269 F.2d at p. 326.)

*Rappaport* involved a wrongful death action by a widow against the operators of four taverns for selling liquor to an intoxicated minor who negligently killed her husband in an automobile accident. Although New Jersey had repealed its dram shop act, the New Jersey Supreme Court held that the action was permissible under common law negligence principles. The court stated that "Where a tavern keeper sells alcoholic beverages to a person who is visibly intoxicated or a person he knows or should know

from the circumstances to be a minor, he ought to recognize and foresee the unreasonable risk of harm to others through action of the intoxicated person or the minor." (31 N.J. at p. 201.) The court determined that a criminal statute and administrative regulations forbidding the sale of alcoholic beverages to a minor or an intoxicated person were intended to protect members of the general public and concluded that "If the patron is a minor or is intoxicated when served, . . . and if the circumstances are such that the tavern keeper knows or should know that the patron is a minor or is intoxicated, his service to him may . . . constitute common law negligence." (*Id.* at p. 202.) Finally, the court rejected the defendants' contention that their conduct, if negligent, was not the proximate cause of the injuries suffered. It stated: "But a tortfeasor is generally held answerable for the injuries which result in the ordinary course of events from his negligence and it is generally sufficient if his negligent conduct was a substantial factor in bringing about the injuries. [Citations.] The fact that there were also intervening causes which were foreseeable or were normal incidents of the risk created would not relieve the tortfeasor of liability. [Citations.] Ordinarily these questions of proximate cause are left to the jury for its factual determination." (*Id.* at p. 203.) It was concluded that under the facts alleged in the complaint, a jury could reasonably find that the defendants' negligence was a substantial factor in bringing about the decedent's fatal injuries and that the minor's negligent operation of his automobile was a normal incident of the risk created by the defendants, or an event which they could reasonably have foreseen.

To the extent that the common law rule of nonliability is based on concepts of proximate cause, we are persuaded by the reasoning of the cases that have abandoned that rule. The decisions in those jurisdictions which have abandoned the common law rule invoke principles of proximate cause similar to those established in this state by cases dealing with matters other than the furnishing of alcoholic beverages. (See *Schwartz* v. *Helms Bakery Limited* (1967) 67 Cal.2d 232 [60 Cal.Rptr. 510, 430 P.2d 68]; *Stewart* v. *Cox* (1961) 55 Cal.2d 857, 863-864 [13 Cal.Rptr. 521, 362 P.2d 345]; *Richardson* v. *Ham* (1955) 44 Cal.2d 772, 777 [285 P.2d 269]; *McEvoy* v. *American Pool Corp.* (1948) 32 Cal.2d 295, 298-299 [195 P.2d 783]; *Mosley* v. *Arden Farms Co.* (1945) 26 Cal.2d 213, 218 [157 P.2d 372, 158 A.L.R. 872]; *Stasulat* v. *Pacific Gas & Elec. Co.* (1937) 8 Cal.2d 631, 637 [67 P.2d 678]; Prosser, *Proximate Cause in California* (1950) 38 Cal.L.Rev. 369.) ██ Under these principles an actor may be liable if his negligence is a substantial factor in causing an injury, and he is not relieved of liability because of the intervening act of a third person if such act was reasonably foreseeable at the time of his negligent conduct. (*Stewart* v. *Cox, supra,* 55 Cal.2d at pp. 863-864;

*Richardson* v. *Ham, supra,* 44 Cal.2d at p. 777; *Eads* v. *Marks* (1952) 39 Cal.2d 807, 812 [249 P.2d 257]; *Benton* v. *Sloss* (1952) 38 Cal.2d 399, 405 [240 P.2d 575]; *Mosley* v. *Arden Farms Co., supra,* 26 Cal.2d at p. 218; *Fuller* v. *Standard Stations, Inc.* (1967) 250 Cal.App.2d 687, 691 [58 Cal.Rptr. 792]; *Ewert* v. *Southern Cal. Gas Co.* (1965) 237 Cal.App.2d 163, 169-173 [46 Cal.Rptr. 631]; Rest.2d Torts, §§ 302, 302A, 431, 447.) ▮ Moreover, "If the likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious or criminal does not prevent the actor from being liable for harm caused thereby." (Rest.2d Torts, § 449; *Schwartz* v. *Helms Bakery Limited, supra,* 67 Cal.2d at pp. 241-242; *Richardson* v. *Ham, supra,* 44 Cal.2d 772, at p. 777; *McEvoy* v. *American Pool Corp., supra,* 32 Cal.2d 295, at p. 299.)

Insofar as proximate cause is concerned, we find no basis for a distinction founded solely on the fact that the consumption of an alcoholic beverage is a voluntary act of the consumer and is a link in the chain of causation from the furnishing of the beverage to the injury resulting from intoxication. ▮ Under the above principles of proximate cause, it is clear that the furnishing of an alcoholic beverage to an intoxicated person may be a proximate cause of injuries inflicted by that individual upon a third person. If such furnishing is a proximate cause, it is so because the consumption, resulting intoxication, and injury-producing conduct are foreseeable intervening causes, or at least the injury-producing conduct is one of the hazards which makes such furnishing negligent.

The central question in this case, therefore, is not one of proximate cause, but rather one of duty: Did defendant Sager owe a duty of care to plaintiff or to a class of persons of which he is a member?

▮ A duty of care, and the attendant standard of conduct required of a reasonable man, may of course be found in a legislative enactment which does not provide for civil liability. (See *Richards* v. *Stanley* (1954) 43 Cal.2d 60, 63 [271 P.2d 23]; *Routh* v. *Quinn* (1942) 20 Cal.2d 488, 492 [127 P.2d 1, 149 A.L.R. 215]; 2 Witkin, Summary of Cal. Law (1960) Torts, § 234.) ▮ In this state a presumption of negligence arises from the violation of a statute which was enacted to protect a class of persons of which the plaintiff is a member against the type of harm which the plaintiff suffered as a result of the violation of the statute. (*Alarid* v. *Vanier* (1958) 50 Cal.2d 617 [327 P.2d 897]; *Satterlee* v. *Orange Glenn School Dist.* (1947) 29 Cal.2d 581 [177 P.2d 279].) The Legislature has recently codified this presumption with the adoption of Evidence Code section 669:

"The failure of a person to exercise due care is presumed if: (1) He violated a statute, ordinance, or regulation of a public entity; (2) The violation proximately caused death or injury to person or property; (3) The death or injury resulted from an occurrence of the nature which the statute, ordinance, or regulation was designed to prevent; and (4) The person suffering the death or the injury to his person or property was one of the class of persons for whose protection the statute, ordinance, or regulation was adopted." (Subd. (a).)

■ In the instant case a duty of care is imposed upon defendant Sager by Business and Professions Code section 25602, which provides: "Every person who sells, furnishes, gives, or causes to be sold, furnished, or given away, any alcoholic beverage to any habitual or common drunkard or to any obviously intoxicated person is guilty of a misdemeanor." ■ This provision was enacted as part of the Alcoholic Beverage Control Act of 1935 (Stats. 1935, ch. 330, § 62, at p. 1151) and was adopted for the purpose of protecting members of the general public from injuries to person and damage to property resulting from the excessive use of intoxicating liquor.

Our conclusion concerning the legislative purpose in adopting section 25602 is compelled by Business and Professions Code section 23001, which states that one of the purposes of the Alcoholic Beverage Control Act is to protect the safety of the people of this state. Moreover, our interpretation of section 25602 finds support in the decisions of those jurisdictions in which similar statutes, and statutes prohibiting the sale of alcoholic beverages to minors, have been found to have been enacted for the purpose of protecting members of the general public against injuries resulting from intoxication. (See *Waynick* v. *Chicago's Last Department Store, supra,* 269 F.2d 322, at p. 325; *Deeds* v. *United States, supra,* 306 F.Supp. 348, at p. 359; *Davis* v. *Shiappacossee, supra,* 155 So.2d 365, at p. 367; *Elder* v. *Fisher, supra,* 247 Ind. 598, at p. 603; *Rappaport* v. *Nichols, supra,* 31 N.J. 188, at p. 202.)

■ From the facts alleged in the complaint it appears that plaintiff is within the class of persons for whose protection section 25602 was enacted and that the injuries he suffered resulted from an occurrence that the statute was designed to prevent. Accordingly, if these two elements are proved at trial, and if it is established that Sager violated section 25602 and that the violation proximately caused plaintiff's injuries, a presumption will arise that Sager was negligent in furnishing alcoholic beverages to O'Connell. (See Evid. Code, § 669.)

Defendant Sager maintains, however, that a change in the common law rule governing the liability of a tavern keeper to an injured third person is

unwarranted and that if there is to be a change in the rule, it should be made by the Legislature, not by the courts. As to the first part of his argument, defendant contends that imposition of civil liability upon tavern keepers would not alter the extent to which the consumption of intoxicants contributes to automobile accidents and that such liability would not be an adequate deterrent to the unlawful sale of alcoholic beverages. Moreover, defendant asserts that the injured third person is already assured of compensation for his injuries by Vehicle Code sections 16000-16053 and Insurance Code section 11580.2. Concerning the second part of his argument, defendant maintains the Legislature is better equipped to determine whether civil liability should be imposed for furnishing alcoholic beverages to an individual who injures himself or third persons. Defendant contends that the decision to impose liability presents various questions as to the scope of such liability, e.g., whether an intoxicated patron ought to recover for injuries sustained as a result of his intoxication and whether liability should be imposed upon a package liquor store or a noncommercial furnisher of intoxicating liquor. Because of the existence of these and other questions, defendant argues that the entire matter of civil liability for furnishing alcoholic beverages should be left to the Legislature.

Defendant's arguments that the question of civil liability for tavern keepers should be left to future legislative action is faulty in two respects. First, liability has been denied in cases such as the one before us solely because of the judicially created rule that the furnishing of alcoholic beverages is not the proximate cause of injuries resulting from intoxication. As demonstrated, *supra*, this rule is patently unsound and totally inconsistent with the principles of proximate cause established in other areas of negligence law. Other common law tort rules which were determined to be lacking in validity have been abrogated by this court (see *Gibson* v. *Gibson* (1971) 3 Cal.3d 914 [92 Cal.Rptr. 288, 479 P.2d 648]; *Muskopf* v. *Corning Hospital Dist.* (1961) 55 Cal.2d 211 [11 Cal.Rptr. 89, 359 P.2d 457]), and there is no sound reason for retaining the common law rule presented in this case. Second, the Legislature has expressed its intention in this area with the adoption of Evidence Code section 669, and Business and Professions Code section 25602. The California Law Revision Commission's recommendation relating to Evidence Code section 669 states that the presumption contained in the section "should be classified as a presumption affecting the burden of proof *in order to further the public policies expressed in the various statutes, ordinances, and regulations to which it applies.*" (Italics added; Cal.Law Revision Com. Rep. p. 109; see, Evid. Code, § 605.) It is clear that Business and Professions Code section 25602 is a statute to which this presumption applies and that the policy expressed in the statute is to promote the safety of the people of California (see Bus. &

Prof. Code, § 23001). To accept defendant's contentions and hold that plaintiff's complaint does not state a cause of action would be to thwart the legislative policies expressed in both statutes.

 For the reasons discussed herein, we overrule *Cole* v. *Rush* (1955) 45 Cal.2d 345 [289 P.2d 450, 54 A.L.R.2d 1137] and *Lammers* v. *Pacific Railway Company* (1921) 186 Cal. 379 [199 P. 523] to the extent that they are inconsistent with this decision. To the same extent we disapprove of *Fleckner* v. *Dionne* (1949) 94 Cal.App.2d 246 [210 P.2d 530] and *Hitson* v. *Dwyer* (1943) 61 Cal.App.2d 803 [143 P.2d 952].

*Motion to Strike*

Plaintiff contends that the trial court erred in granting defendant Sager's motion to strike as sham that portion of the complaint which alleges that O'Connell was driving the automobile with the consent, permission, and knowledge of the other defendants, that each of the defendants was the agent and employee of the others, and that each defendant was acting within the scope of his agency and employment. As mentioned previously, in support of the motion to strike, defendant Sager submitted his declaration in which he stated that Earl Dirks, the owner of the car driven by O'Connell, and O'Connell were not in his employment on the date of the accident and that he had no ownership interest or any other interest in the car driven by O'Connell. Plaintiff argues that the declaration was insufficient to support the trial court's ruling because it contained only conclusions of law. In addition, he maintains that the allegations in his verified complaint are sufficient to controvert the factual allegations in Sager's declaration.

From an examination of the points and authorities in support of the motion to strike, it is clear that the motion was not one for summary judgment (Code Civ. Proc., § 437c), but rather was a "speaking motion,"[4] addressed to the "inherent right of a court to strike or dismiss a complaint when it is made to appear by extraneous evidence that it is sham and based upon false allegations." (*Lincoln* v. *Didak* (1958) 162 Cal.App.2d 625, 631 [328 P.2d 498].) In *Pianka* v. *State of California* (1956) 46 Cal.2d 208, 211 [293 P.2d 458], we stated that such "nonstatutory speaking motions have . . . been superseded by the procedure governing motions for summary judgment contained in section 437c of the Code of Civil Pro-

---

[4]A speaking motion to dismiss or strike is one which is supported by facts outside the pleadings (*Lerner* v. *Ehrlich* (1963) 222 Cal.App.2d 168, 171 [35 Cal.Rptr. 106].) Such facts ordinarily are set forth in an affidavit or declaration. (See *Lincoln* v. *Didak, supra*, 162 Cal.App.2d 625 at p. 630; *Cunha* v. *Anglo California Nat. Bank* (1939) 34 Cal.App.2d 383, 388-389 [93 P.2d 572].)

cedure." Thereafter, in *Lavine* v. *Jessup* (1957) 48 Cal.2d 611, 614, footnote 2 [311 P.2d 8], we voiced our adherence to the ruling in *Pianka*.[5]

Defendant relies upon *Lincoln* v. *Didak, supra,* 162 Cal.App.2d 625, in which the court held that the Legislature, through the adoption of Code of Civil Procedure section 435,[6] had reaffirmed the inherent right of a court to strike or dismiss a complaint through the use of nonstatutory "speaking motions." In so holding, the court placed particular emphasis upon the fact that the cause of action in *Pianka* arose prior to the enactment of section 435.

The conclusions reached by the court in *Lincoln* lack support.[7] The court's reliance upon the fact that the cause of action in *Pianka* arose prior to the enactment of section 435 is misplaced. As mentioned previously, in *Lavine, supra,* 48 Cal.2d 611, decided nearly two years after the enactment of section 435,[8] we emphasized the continuing validity of our decision in

---

[5] *Lavine* v. *Jessup, supra,* 48 Cal.2d 611, did not involve a "speaking motion" to strike. In that case the trial court granted a motion to strike the plaintiff's complaint as sham because it had sustained demurrers to four identical complaints by the plaintiff.

[6] Section 435 provides: "The defendant, within the time required in the summons to answer, either at the time he demurs to the complaint, or without demurring, may serve and file a notice of motion to strike the whole or any part of the complaint. The notice of motion to strike shall specify a hearing date not more than 15 days from the filing of said notice, plus any additional time that the defendant, as moving party, is otherwise required to give the plaintiff. If defendant serves and files such a notice of motion without demurring, his time to answer the complaint shall be extended and no default may be entered against him, except as provided in Sections 585 and 586, but the filing of such a notice of motion shall not extend the time within which to demur."

[7] The court's reasoning has been criticized as being of "doubtful validity" (2 Chadbourn, Grossman & van Alstyne, Cal. Pleading, § 1463 at p. 551; cf. 3 Witkin, Cal. Procedure (2d ed. 1971) § 856 at p. 2459 (debatable reasoning).) The overwhelming majority of the reported Court of Appeal decisions follow our decision in *Pianka* and treat a speaking motion to dismiss or strike a complaint as a motion for summary judgment. (See *Hosking* v. *Spartan Properties, Inc.* (1969) 275 Cal.App.2d 152, 154-156 [79 Cal.Rptr. 893]; *Triodyne, Inc.* v. *Superior Court* (1966) 240 Cal.App.2d 536, 542-543 [49 Cal.Rptr. 717]; *Auberry Union School Dist.* v. *Rafferty* (1964) 226 Cal.App.2d 599, 603 [38 Cal.Rptr. 223]; *Lerner* v. *Ehrlich, supra,* 222 Cal.App.2d 168, 171-172; *Vallejo* v. *Montebello Sewer Co., Inc.* (1962) 209 Cal.App.2d 721, 729-730 [26 Cal.Rptr. 447]; *Callahan* v. *Chatsworth Park, Inc.* (1962) 204 Cal.App.2d 597 [22 Cal.Rptr. 606]; but see, *Estate of Emery* (1962) 199 Cal.App.2d 22 [18 Cal.Rptr. 86]; *Lincoln* v. *Didak, supra.*) Despite our ruling in *Pianka,* our reiteration of the ruling in *Lavine, supra,* 48 Cal.2d at page 614, footnote 2, and the various decisions of the Courts of Appeal following those two cases, Witkin reports that the use of nonstatutory speaking motions persists. (3 Witkin, *op. cit. supra,* § 856, at p. 2459.)

[8] Legislation enacting section 435 was signed by the Governor on June 29, 1955, and took effect September 7, 1955. (Stats. 1955, ch. 1452, at p. 2639.) *Lavine, supra,* 48 Cal.2d 611, was decided May 28, 1957. Although there is nothing to indicate when the cause of action arose, the order granting the motion to strike was entered in the court's minutes November 10, 1955. (48 Cal.2d 611, at p. 613.)

*Pianka.* More importantly, the substantive effect ascribed to section 435 by the *Lincoln* decision is inconsistent with the section's legislative history, which indicates that the section was added to the Code of Civil Procedure merely to make the motion to strike a pleading and to establish procedures governing its use.[9] We therefore disapprove of the decision in *Lincoln* and treat the motion to strike in the instant case as a motion for summary judgment.[10]

■ Tested by the principles governing summary judgments, plaintiff's arguments prove to be without merit. We do not find Sager's statements that his codefendants were "not in his employment on the date of the accident" and that he had no "ownership interest" or "any other interest" in the vehicle involved to be mere conclusions of law. ■ In addition, plaintiff cannot rely upon the allegations of his verified complaint to controvert the statements in defendant's declaration. (See *Coyne* v. *Krempels* (1950) 36 Cal.2d 257, 263 [223 P.2d 244]; 2 Witkin, Cal. Procedure (1954), § 78, p. 1715.)

Nevertheless, defendant's declaration is insufficient to warrant summary judgment. ■ The standards for determining when summary judgment should be granted were reiterated by this court in *Stationers Corp.* v. *Dun & Bradstreet, Inc.* (1965) 62 Cal.2d 412, 417 [42 Cal.Rptr. 449, 398 P.2d 785]: "Summary judgment is proper only if the affidavits in support of the moving party would be sufficient to sustain a judgment in his favor and his opponent does not by affidavit show such facts as may be deemed by the judge hearing the motion sufficient to present a triable issue." ■ In the instant case plaintiff did not file a counteraffidavit or declaration. Nevertheless, the failure of an opposing party to file such documents does not relieve the moving party of the burden of establishing the evidentiary facts of every element necessary to entitle him to a judgment. (*Brewer* v. *Reliable Automotive Co.* (1966) 240 Cal.App.2d 173, 175 [49 Cal.

---

[9]The Senate Interim Judiciary Committee Report dealing with section 435 states: "A second change by the measure [S.B. 815] is to make a motion to strike sufficient as a pleading and an appearance, to prevent default. Such a motion, however, must be noticed for prompt hearing. (See § 585, in particular.) Often a complaint or cross-complaint alleges scandalous or other irrelevant matter which should be eliminated before the litigant is compelled to answer. At present, it is necessary to file a demurrer with the motion to strike, even though the demurrer is not pressed. The changes, however, do not extend the time to demur. (§ 585.) Only the time to answer would be extended. Thus, a litigant could not first file a motion to strike, and then, if that be denied, file a demurrer." (3d Prog. Rep. at p. 60.)

[10]Since our decision in *Pianka,* section 437c of the Code of Civil Procedure has been amended to provide for partial summary judgment where it is shown that a good cause of action does not exist as to part of a plaintiff's claim. (Stats. 1965, ch. 162, p. 1126.)

Rptr. 498]; *American Society of Composers, Authors & Publishers* v. *Superior Court* (1962) 207 Cal.App.2d 676, 687 [24 Cal.Rptr. 772]; *House* v. *Lala* (1960) 180 Cal.App.2d 412, 416 [4 Cal.Rptr. 366]; see, *de Echeguren* v. *de Echeguren* (1962) 210 Cal.App.2d 141, 148-149 [26 Cal.Rptr. 562]; 2 Witkin, Cal. Procedure (1967 Supp.) § 78, p. 626.) Defendant, through the filing of his declaration, has failed to discharge this burden.

Plaintiff's allegations that O'Connell was Sager's agent and employee at the time of the accident and that O'Connell was driving the automobile with the consent, permission, and knowledge of Sager sought to impose liability upon Sager under the doctrine of *respondeat superior* and under the imputed negligence provisions of the Vehicle Code. (Veh. Code, § 17150 et seq.) Defendant's declaration is insufficient to warrant the granting of summary judgment as to a cause of action based on the former theory since O'Connell might have been acting within the scope of an agency relationship at the time of the accident even though he was not in Sager's employment. (Cf. *Flores* v. *Brown* (1952) 39 Cal.2d 622 [248 P.2d 922]; *Souza* v. *Corti* (1943) 22 Cal.2d 454 [139 P.2d 645, 147 A.L.R. 861].) Nor is the declaration sufficient to warrant summary judgment under the imputed negligence provisions of the Vehicle Code since a person may be subject to liability under those provisions even though he has no proprietary interest in a vehicle (see Veh. Code, § 17154 (negligence of operator imputed to bailee); Friedenthal, *Imputed Contributory Negligence* (1964) 17 Stan.L. Rev. 55, 56.) Accordingly, defendant's declaration is insufficient to support the granting of summary judgment as to a cause of action based upon either of these theories of liability.

The judgment of dismissal is reversed.

McComb, J., Peters, J., Tobriner, J., Mosk, J., Burke, J., and Sullivan, J., concurred.