[No. D000797. Fourth Dist., Div. One. Apr. 8, 1986.]

LUIS PENA, JR., Plaintiff and Appellant, v.
W. H. DOUTHITT STEEL & SUPPLY COMPANY, INC., et al.,
Defendants and Respondents.

COUNSEL

Michael J. Goldberg, Gary Paul and Craig J. de Recat and Greene, O'Reilly, Broillet, Paul, Simon, McMillan, Wheeler & Rosenberg for Plaintiff and Appellant.

Edward C. Schwer, Michael M. Anello, Wingert, Grebing, Anello & Chapin, Bruce Janger, Michael J. McHale, McHale & Connor, Virginia R. Gilson, Cary W. Miller, McInnis, Fitzgerald, Rees, Sharkey & McIntyre, Robert A. Espinosa and Espinosa & Espinosa for Defendants and Respondents.

OPINION

**WIENER, J.**—In April 1977 plaintiff Luis Pena, Jr., was seriously injured at the Meloland Feed Company in El Centro where he worked when his right leg and left arm were pulled into a worm gear conveyor and auger

used to convey grain and other feed to cattle and other livestock. On March 20, 1978, Pena filed this action against several defendants seeking damages for his personal injuries on theories of strict liability, negligence and breach of warranty. Shortly before trial in March 1983 five defendants successfully moved for summary judgment: Houdaille Industries, Inc. (Houdaille), McDonald Mill Supply (McDonald), Douthitt Steel and Supply Company, Inc. (Douthitt), Fito Yturralde and Danny Dannenberg Farms, a division of California Farm Exchange, Inc. (Dannenberg). Pena appeals the judgments. We reverse as to Houdaille and McDonald and affirm as to Douthitt, Yturralde and Dannenberg.

DISCUSSION

Before discussing each judgment we state certain general principles which govern our analysis.

■ In deciding a summary judgment motion the trial court must determine whether "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c), *Harman* v. *Mono General Hospital* (1982) 131 Cal.App.3d 607, 612-613 [182 Cal.Rptr. 570].) The court does not resolve conflicting factual allegations because the purpose of the summary judgment procedure is to discover whether the parties have evidence requiring assessment at trial. This procedure is drastic and should be used with caution so that it does not become a substitute for trial. (*Stationers Corp.* v. *Dun & Bradstreet, Inc.* (1965) 62 Cal.2d 412, 417 [42 Cal.Rptr. 449, 398 P.2d 785].) Accordingly, the affidavits and declarations of the moving party are strictly construed. Those of the party opposing the judgment, even if in conclusionary terms, are liberally construed. (*Gray* v. *Reeves* (1977) 76 Cal.App.3d 567, 573 [142 Cal.Rptr. 716].)

Pena's strict liability cause of action is based on his allegation the defendants were in some way involved in the manufacture, sale, installation, repair, inspection, construction, design or testing of the defective worm gear conveyor and auger. Liability on this cause of action requires that Pena show his injuries were caused by the act of a specific defendant or by an instrumentality under that defendant's control. (*Sindell* v. *Abbott Laboratories* (1980) 26 Cal.3d 588, 597-598 [163 Cal.Rptr. 132, 607 P.2d 924, 2 A.L.R.4th 1061].) A manufacturer with no relationship to the design, production, manufacturer or sale of the product has no liability. (*Garcia* v. *Joseph Vince Co.* (1978) 84 Cal.App.3d 868, 874 [148 Cal.Rptr. 843].)

■ It is important to recognize in this context, however, that even where the plaintiff will bear the burden of establishing critical elements of his case

at trial, the burden is on the party moving for summary judgment (in this case defendants) to establish an uncontested factual basis which will support judgment in his favor as a matter of law. (*Vesely* v. *Sager* (1971) 5 Cal.3d 153, 169 [95 Cal.Rptr. 623, 486 P.2d 151].) "When the moving party is the defendant the latter must conclusively negate a necessary element of the plaintiff's case and demonstrate that under no hypothesis is there a material factual issue which requires the process of a trial." (*Frazier, Dame, Doherty, Parrish & Hanawalt* v. *Boccardo, Blum, Lull, Niland, Teerlink & Bell* (1977) 70 Cal.App.3d 331, 339 [138 Cal.Rptr. 670].)

With these principles in mind, we turn to the factual presentation made by each of the moving defendants.

HOUDAILLE

■ Pena alleged Houdaille manufactured the defective auger. The documents in support of Houdaille's summary judgment motion established the following:

On October 19, 1981, Harvey Echols of Houdaille's Fort Worth Steel Division inspected the accident location and the auger. Echols concluded Houdaille did not manufacture the auger which was in place on that date. On June 16, 1982, Houdaille requested production of the auger which was used on the date of Pena's injuries. Pena's counsel responded that neither he nor anyone acting on his behalf had possession of the auger. In February 1983 Houdaille moved for summary judgment.

The documents opposing the motion contained Pena's counsel's statement that he possessed the original auger screw. The auger sections had been placed in storage shortly after the accident where they had remained since that time. He admitted his earlier statement made in good faith was wrong.

We are disturbed by counsel's initial denial that he did not have possession of the auger. This statement has placed an unfair burden on Houdaille preventing it from determining whether it manufactured the auger or any part of the product which injured Pena. Unfairness, however, is not the criterion upon which a court may decide a summary judgment motion. The relevant criterion is whether Houdaille has "conclusively negate[d] a necessary element of the plaintiff's case . . . ." (*Frazier, supra,* 70 Cal.App.3d at p. 339.) Here since the auger was replaced after the accident, Houdaille's moving papers establishing that it did not manufacture the 1981 auger do not resolve any issue relevant to this dispute.

We recognize that Pena has made no showing that Houdaille in fact manufactured the allegedly defective auger. If he makes no better showing at

trial, Houdaille will undoubtedly be entitled to a judgment of nonsuit. (See *Garcia* v. *Joseph Vince Co.*, *supra*, 84 Cal.App.3d at pp. 873-875.) But at the summary judgment stage the rule is different; the failure of a party to submit evidence in opposition to the motion "does not relieve the moving party of the burden of establishing the evidentiary facts of every element necessary to entitle him to a judgment." (*Vesely* v. *Sager, supra,* 5 Cal.3d at p. 169; *Clendening* v. *Shipton* (1983) 149 Cal.App.3d 191, 195-196 [196 Cal.Rptr. 654].) In *Barnes* v. *Blue Haven Pools* (1969) 1 Cal.App.3d 123, 127 [81 Cal.Rptr. 444], the court explained the effect of this difference in rules in a discussion peculiarly applicable to the present case: "At a trial of this case plaintiff would have the burden of proving defendant's negligence . . . . That being so, plaintiff would not be entitled to go to the jury, if at the time of trial he comes up with nothing better than was before the court in connection with the defendant's motion for summary judgment. [¶] On the other hand the facts presented by the defendant's papers do not negative negligence. A summary judgment in favor of a defendant is proper 'if it is claimed the action has no merit' (Code Civ. Proc., § 437c) and such claim is proved to be correct. There is nothing in the statute which lessens the burden of the moving party simply because at the trial the resisting party would have the burden of proof on the issue on which the summary judgment is sought to be predicated. In such a case, on the motion for summary judgment, *the moving party must generally negative the matters which the resisting party would have to prove at the trial.*" (Italics added.)

Apparently recognizing that its papers fail to establish that it did *not* manufacture the auger, Houdaille directs us to *Sheffield* v. *Eli Lilly & Co.* (1983) 144 Cal.App.3d 583 [192 Cal.Rptr. 870] to support the judgment. In *Sheffield,* plaintiffs conceded their inability to prove which of five possible pharmaceutical companies manufactured the allegedly adulterated Salk polio vaccine which was administered to the minor plaintiff. The court rejected plaintiffs' attempt to invoke the "market share" theory of *Sindell* v. *Abbott Laboratories, supra,* 26 Cal.3d 588 under which a plaintiff may be excused from proving which of a number of possible tortfeasors is responsible for the injury. *Sheffield* held that the *Sindell* theory did not apply unless the plaintiff could show that all defendants acted tortiously, i.e., manufactured the same defective product. (*Sheffield, supra,* 144 Cal.App.3d at p. 596.) The court went on to affirm the lower court's grant of summary judgment as to all five defendants on the ground that there was no triable issue of fact on the question of the identity of the defendant which manufactured the allegedly defective vaccine. (*Id.,* at p. 611.)

*Sheffield* is a unique situation because there plaintiffs admitted their inability to identify which defendant manufactured the defective product. (*Ibid.*) Under those circumstances a trial becomes an exercise in futility and

summary judgment is arguably proper. Here, however, Pena has made no similar admission. Although it would have been more intellectually satisfying had Pena filed opposing documents identifying how or in what manner Houdaille's participation caused the auger to be defective, he was under no obligation to do so. Pena has alleged Houdaille produced a defective product. Houdaille has not demonstrated it did not manufacture the product. Whether the product is defective remains a triable factual issue. Both Pena's complaint and the documents opposing the motion for summary judgment reflect his intent to prove that Houdaille was the manufacturer. He is entitled to attempt that proof at trial.

McDONALD

■ Pena's theory against McDonald is based on McDonald's sale of replacement parts for portions of the auger over a period of several years. Although Pena has been unable to pinpoint which defendant manufactured or supplied the allegedly defective part, his answers to interrogatories state McDonald supplied "pins, bolts, hangers and screwflights" for the auger and the conveyor system which injured him.

McDonald's summary judgment motion is primarily grounded on the unfairness of Pena's failure to diligently prosecute the action. That argument, however, cannot serve as the basis for the granting of a summary judgment motion.

McDonald's further argument is similar to the one made by Houdaille: Pena has failed to show his injuries were "caused by the act of the defendant or by an instrumentality under the defendant's control." (*Sheffield* v. *Eli Lilly & Co.*, *supra*, 144 Cal.App.3d at p. 593.) The record does show that McDonald was involved in supplying parts to the auger which injured Pena. McDonald's declarations, however, do not establish that the parts supplied were not defective. There is simply no evidence on this issue. Again, unlike *Sheffield*, Pena has not conceded he will be unable to satisfy his burden of proof at trial. We take the absence of this concession to mean that he appreciates he has the obligation at trial to identify which defendant manufactured the defective product. The issues of whether the auger and conveyor system were defective and which defendant if any manufactured that product remain triable issues. The court erred in granting the summary judgment in favor of McDonald.

DOUTHITT

■ Douthitt moved for summary judgment on the ground there was no evidence to show it designed, installed or sold any of the component parts

to the conveyor system nor had it sold as a repair item the item which caused Pena's injuries.

Sam Hayes declared he had been continuously employed by Douthitt since 1961. Douthitt did not manufacture feed lot equipment before 1965. Douthitt did not manufacture, produce or sell to Butts Engineering any parts or components for the feedlot at Meloland Cattle Company. Hayes recalled Douthitt sold raw steel to Butts Engineering but he did not know how the steel was used.

Pena's opposing documents included the declaration of his attorney, Craig J. de Recat, and law clerk, Stephen L. Jacques. De Recat declared Jacques had searched the records of the company which had fabricated the conveyor system, Butts Engineering, and had discovered certain records which he attached to his declaration. The five pages of business records from Butts Engineering show the name of Douthitt Steel on a general ledger form entitled "miscellaneous accounts." It contains no other evidence linking Douthitt to the auger.

De Recat also referred to LaVerne Darnell's deposition testimony that Douthitt supplied certain material to Meloland Cattle Company. His testimony did not identify for what purpose the materials had been supplied.

Pena's claim against Douthitt falls within the general rule that he must show that his injuries were caused by the act of the defendant or by an instrumentality under the defendant's control. (*Sindell* v. *Abbott Laboratories, supra,* 26 Cal.3d at pp. 597-598.) Here, Hayes' declaration categorically denies Douthitt manufactured the product which injured Pena. There is no evidence which connects Douthitt with the auger or conveyor system other than a general ledger on which his name appears. The inference which Pena asks us to draw is solely conjectural. Lacking any factual conflict the court properly granted the summary judgment motion in favor of Douthitt.

YTURRALDE

Yturralde's declaration in support of his summary judgment declared Butts Engineering of Los Angeles hired him in 1962 as an electrical contractor to install electrical wiring in a feed mill at the Meloland Cattle Company. He installed wiring at the mill according to blueprints provided by Butts. He did not participate in the formulation of the blueprints or in the design of the mill. He completed the contract in 1962 and provided some maintenance service not lasting more than a few months. Yturralde

had nothing to do with the design of the facilities nor did he make any representations regarding the design or safety of the facility.

Pena filed no opposing declarations. He relied upon Yturralde's allegedly inconsistent statements during discovery. We examine those alleged inconsistencies. Pena says: "In response to interrogatories, defendant YTURRALDE swore categorically that he had not [*sic*] involvement in the installation of the subject feed mill and conveyor system. Thus, in his sworn deposition, YTURRALDE categorically denied participation in the assembly of the mill or in the installation of the system, stating only that he made 'an electrical connection in 1963.' While in his declaration in support of his Motion, YTURRALDE stated, again under oath, that he was 'employed to install electrical wiring in the subject feed mill.'"

The actual interrogatory is, "Did you in any way whatsoever participate in the assembly of the *subject product?*" (Italics supplied.) Subject product was defined as "that certain worm gear screw type conveyor and auger situated upon the above described premises where the plaintiff was working at the time of his injury." Yturralde's declaration in opposition to the motion and his negative answer to the question of whether he participated in the assembly of the worm gear screw type conveyor and auger are consistent.

Pena also complains about the alleged inconsistency between Yturralde's denying participation in installing the system since his declaration only refers to his making "an electrical connection in 1963." The interrogatory to Yturralde is, "Did you in any manner whatsoever participate in the sale, lease, distribution or promotion of the [certain worm gear screw type conveyor and auger situated upon the above-described premises where the plaintiff was working at the time of his injury]?" Yturralde answered no. This answer is consistent with his position he had nothing to do with the conveyor system and auger other than wiring. Yturralde's answer describing what he did explaining he "had no activities with respect to the [worm gear screw type conveyor]" limiting his response to making "an electrical connection to a motor in 1963" is also consistent with his testimony throughout the proceedings.

Pena's contention that Yturralde is inconsistent in his deposition where he denied using any manufacturer's instructions is incorrect. Yturralde declared, "I installed wiring at the mill according to blueprints provided by BUTTS ENGINEERING. I did not participate in the formulation of the blueprints or in the design of the mill." These responses are consistent.

Pena finally argues Yturralde's deposition in which he denied he was paid for any work in connection with the assembly of the mill is inconsistent with the sworn declaration he was paid for his services "directly from BUTTS ENGINEERING." Again, however, we find nothing inconsistent with Yturralde's responses that he did not participate in the assembly of the conveyor and "not applicable" when asked how much he was paid for his participation in the assembly. Yturralde consistently said he was paid by Butts Engineering. The court properly granted the summary judgment in favor of Yturralde.

DANNENBERG

Pena's complaint against Dannenberg alleges an ownership interest in Meloland Cattle Company at the time of the accident or some involvement in the design or installation of the auger involved in Pena's injury.

Dannenberg established Meloland Cattle Company is a division of Alamo Cattle Feeders, Inc. a wholly owned subsidiary of Western Beef, Inc. Western Beef, Inc. is also the sole owner of Melcatco. Miller's Mutual Fire Insurance Company is the workers' compensation insurer for these entities. Miller's paid and continues to pay Pena's claim for workers' compensation benefits.

Julian Dannenberg declared in 1964 he was the president of Meloland Cattle Company. At that time Meloland owned the land where Pena's accident occurred. In June 1971 Dannenberg pledged his Meloland stock to the United California Bank. After that date he had no further relationship with the property. Danny Dannenberg Farms, Inc. and Danny Dannenberg Farms are the names of divisions of California Farm Exchange, Inc., entities which have no relationship to Meloland Cattle Company. In 1973, Melcatco acquired Meloland Cattle Company's interest in the subject property.

Pena argues Dannenberg is liable as a successor corporation. (See *Rawlings* v. *D. M. Oliver, Inc.* (1979) 97 Cal.App.3d 890 [159 Cal.Rptr. 119].) This argument, however, has no factual basis. Dannenberg denies it is a successor to Meloland. Dannenberg has denied having any connection with operation of the feedlot. The documents showing the chain of title to the subject property exclude Dannenberg as having potential liability. There is no factual conflict on any issue presented by Pena's complaint. The court properly granted the summary judgment in favor of Dannenberg.

## Disposition

The judgments in favor of Houdaille and McDonald are reversed. Judgments in favor of Douthitt, Yturralde and Dannenberg are affirmed. Plaintiff shall bear all costs for all defendants on this appeal.

Kremer, P. J., and Work, J., concurred.