[No. E005878. Fourth Dist., Div. Two. June 4, 1990.]

JOSEPH RAMSEY, Plaintiff and Appellant, v.
CITY OF LAKE ELSINORE, Defendant and Respondent.

COUNSEL

Fogel, Feldman, Ostrov, Ringler & Klevens, Michael R. Nebenzahl and Jerome L. Ringler for Plaintiff and Appellant.

Smith & Peckham and George Bruggeman, Jr., for Defendant and Respondent.

OPINION

**DABNEY, J.**—Plaintiff Joseph Ramsey has appealed from a judgment and an award of costs and attorney's fees in favor of defendant City of Lake Elsinore (City) following the granting of the City's motion for summary judgment. The City's motion was granted on the ground that there was no triable issue of fact as to the City's ownership and control of the property on which Ramsey had been injured.

### FACTUAL AND PROCEDURAL BACKGROUND

While crossing Riverside Drive in the City, Ramsey, a pedestrian, was struck by an automobile driven by Randall Gray. Ramsey brought an action against Gray for damages for personal injuries caused by Gray's negligence. Ramsey also sued the City, the County of Riverside (County)

and the State of California (State). Ramsey alleged that each public entity owned, maintained or controlled the property where the accident occurred, in a dangerous condition, thus causing Ramsey's injuries. Gray filed a cross-complaint against the City, the County and the State for indemnity, contribution and declaratory relief.

The City moved for summary judgment.[1] The City contended that it was undisputed that Ramsey's injuries occurred as he was crossing Riverside Drive near Joy Street, the site alleged to be in a dangerous condition, and that the City did not own or control Riverside Drive at or near that intersection. To support its motion, the City attached the declaration of Ron Kirchner, the City's engineer and director of public services. Kirchner stated that he was responsible for the design, construction and inspection of all public works projects and for maintenance of public works, including streets, and for signing, marking and lighting streets. Kirchner asserted that from his examination of City records, his experience and his knowledge of matters within his responsibility, he could state that the City did not own or maintain Riverside Drive at its intersection with Joy Street and did not own or maintain the street lighting there. Kirchner declared that Riverside Drive, also known as State Route 74, is exclusively under the jurisdiction of the State.

The City also requested sanctions, alleging that Ramsey's action against the City was not brought with reasonable cause or in good faith. To support its request for sanctions, the City attached a copy of a letter from the City's claims administrators advising Ramsey's former attorneys that the City rejected Ramsey's claim because the State, not the City, owned and maintained State Highway 74 at the intersection of Joy Street. The letter warned Ramsey's attorneys that if they chose to pursue litigation against the City, the City would seek sanctions under Code of Civil Procedure section 1038.[2, 3] The City also attached a second letter addressed to Gray's attorney,

---

[1] The County had earlier moved for summary judgment on the ground that it had no responsibility for the design, construction, operation or maintenance of Riverside Drive at the location of the accident. To support its motion, the County attached the declaration of Ivan Tennant, the County's deputy road commissioner since 1974. Tennant stated that the County had no responsibility or authority for the design, construction, maintenance or operation at that location.

Ramsey opposed the County's motion on the ground that he had not had time to conduct sufficient discovery, including taking Tennant's deposition. The court continued the matter to allow such discovery, but warned that it "would seriously consider sanctions under Code of Civil Procedure section 1038 should that be necessary at that time based upon the unwillingness of the plaintiff to accept the Declaration of [Tennant] submitted in support of the Motion for Summary Judgment." The motion was taken off calendar, and Ramsey later dismissed his action against the County.

[2] All statutory references are to the Code of Civil Procedure unless otherwise indicated.

[3] Section 1038, subdivision (a) states: "In any civil proceeding under the California Tort Claims Act . . . the court, upon motion of the defendant . . . shall, at the time of the

with Ramsey's present attorney shown as the recipient of a copy. That letter stated that the City did not own or control the roadway on which the accident occurred and that the roadway was exclusively within the jurisdiction of the State.

Soon after the City served its motion, Gray dismissed his cross-complaint against the City. Ramsey and the City stipulated to continue the hearing on the City's motion to allow discovery. Ramsey then brought his own motion for summary adjudication of issues against the State. Ramsey alleged that it was undisputed that the State owned Riverside Drive at its intersection with Joy Street and that the State's ownership extended a certain distance beyond the paved roadway. To establish that these issues were undisputed, Ramsey referred the City's and County's motions for summary judgment and the declarations and exhibits attached to those motions. Ramsey set this motion to be heard at the same time as the City's motion for summary judgment.

In opposition to the City's motion, Ramsey filed a statement of disputed facts. Ramsey disputed the City's statements that it did not own or control the subject property. Ramsey objected to Kirchner's declaration on the grounds that the basis for Kirchner's knowledge could not be ascertained, and that Kirchner had made inconsistent statements in his deposition. Ramsey also filed the declaration of Robert Crommelin, a licensed civil and traffic engineer, whom Ramsey had retained as an expert. Crommelin stated that based on his experience and on the documents he had reviewed in this case, he felt "that there is a reasonable likelihood that the intersection in question constituted a dangerous condition of public property at the time of the accident. However, until I have completed my investigation, . . . I must reserve my final judgment on this subject." Crommelin also stated that the State generally enters into maintenance agreements with local cities for State highways which pass through the cities. Crommelin was "surprised" to read in the City's response to Ramsey's request for production of documents that the City had no such agreement. Finally, Crommelin stated that he could not render an opinion as to whether the State or the City controls the subject intersection.

---

granting of any summary judgment, . . . determine whether or not the plaintiff . . . brought the proceeding with reasonable cause and in the good faith belief that there was a justiciable controversy under the facts and law which warranted the filing of the complaint, . . . If the court should determine that the proceeding was not brought in good faith and with reasonable cause, an additional issue shall be decided as to the defense costs reasonably and necessarily incurred by the party . . . opposing the proceeding, and the court shall render judgment in favor of that party in the amount of all reasonable and necessary defense costs, in addition to those costs normally awarded to the prevailing party. . . ."

Following a hearing, the trial court granted the City's motion for summary judgment. The trial court also granted Ramsey's motion for summary adjudication of issues against the State.

## DISCUSSION

*Contentions on Appeal.* Ramsey now concedes that the State owns Riverside Drive.[4] He contends, nonetheless, that there were triable issues of fact as to whether the City controlled Riverside Drive at the intersection of Joy Street, whether the intersection was in a dangerous condition which the City could have prevented through its ownership and control of Joy Street, and whether the City had the power to prevent, remedy or guard against the dangerous condition of its own property or that of the State. Ramsey also contends that the action was brought in good faith, and that even if the summary judgment is upheld, the award of sanctions should be reversed.

*Standard of Review.* Summary judgment is proper if the supporting papers are sufficient to sustain the judgment in favor of the moving party as a matter of law, and the opposing party presents no evidence which gives rise to a triable issue as to any material fact. (§ 437c.) ■ When reviewing a grant of summary judgment, we independently analyze the construction and effect of the supporting and opposing papers. (*AARTS Productions, Inc.* v. *Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1064 [225 Cal.Rptr. 203].) A defendant who moves for summary judgment must either disprove at least one essential element of every cause of action or prove an affirmative defense that would bar every cause of action in the complaint. (*Conn* v. *National Can Corp.* (1981) 124 Cal.App.3d 630, 637-639 [177 Cal.Rptr. 445].) A defendant may properly rely on the plaintiff's pleadings to supply essential factual elements. (*Id.*, at p. 638.) "If any triable issue of fact exists, it is error for the trial court to grant a party's motion for summary judgment." (*Schrimsher* v. *Bryson* (1976) 58 Cal.App.3d 660, 663 [130 Cal.Rptr. 125].) ■ To defeat a motion for summary judgment, the plaintiff must point to some evidence which supports his claims. (*City of Sacramento* v. *Superior Court* (1982) 131 Cal.App.3d 395, 406 [182 Cal.Rptr. 443].) What facts are material depends upon the allegations of the complaint. (*IT Corp.* v. *Superior Court* (1978) 83 Cal.App.3d 443, 451-452 [147 Cal.Rptr. 828].) Because of the drastic nature of the procedure, ". . . all doubts should be resolved in favor of the party opposing the motion." (*Powell* v. *Standard Brands Paint Co.* (1985) 166 Cal.App.3d 357, 362 [212 Cal.Rptr. 395].)

*Liability of a Public Entity for a Dangerous Condition of Public Property.* Public liability for personal injuries is defined and limited by statute.

---

[4] This should never have been a matter of dispute; the State's ownership of Riverside Drive, also known as State Route 74, is statutory. (Sts. & Hy. Code, § 374.)

Government Code section 835 states: "[A] public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury. . . ." Public property includes ". . . real or personal property owned or controlled by the public entity. . . ." (Gov. Code, § 830, subd. (c).)

■ Under the Tort Claims Act (Gov. Code, § 810 et seq.), to establish the liability of a public entity for a dangerous condition of public property a plaintiff must prove that: the property was in a dangerous condition when the injury occurred; the dangerous condition was a proximate cause of the injury; the dangerous condition created a reasonably foreseeable risk of the kind of injury which occurred; and the public entity had sufficient prior notice of the dangerous condition to enable it to have undertaken measures to protect against such condition. (*County of Ventura* v. *City of Camarillo* (1978) 80 Cal.App.3d 1019, 1024-1025 [144 Cal.Rptr. 296].) ■ Even though an injury occurs on one piece of property, one who owns or controls an adjacent property may be liable if a dangerous condition on the adjacent property caused the accident. (*Ibid.*)

*The Issues Framed by the Complaint.* ■ Ramsey's first amended complaint alleges that Ramsey was walking across Riverside Drive near its intersection with Joy Street when the accident occurred, that Gray was driving "along and upon" Riverside Drive when he collided with Ramsey, and that the City and other public entities "designed, owned, possessed, maintained, occupied, controlled, leased and cared for . . . Riverside Drive near the intersection with Joy Street." Finally, Ramsey alleged that Riverside Drive near the intersection with Joy Street was in a dangerous condition which the public entities, including the City, were negligent in failing to correct.

The City notes that the pleadings relate only to the condition of Riverside Drive and that the City directed its proof toward this issue, as framed by the complaint. Thus, the only relevant evidentiary issue was whether the City had control over Riverside Drive near its intersection with Joy Street.

*City's Authority to Control State Highway.* Ramsey contends that the City had the power to control Riverside Drive near its intersection with Joy Street because in two instances after Ramsey's accident occurred, the City altered traffic control devices at other streets within the City which crossed Riverside Drive. This position does not acknowledge the role which statutes play in governing the allocation of responsibility for roadways within this state.

■ The State, as sovereign, has the original rights to control public streets and highways. This control remains with the Legislature except

insofar as it is relinquished to municipalities. (*Pipoly* v. *Benson* (1942) 20 Cal.2d 366, 369 [125 P.2d 482, 147 A.L.R. 515].) The delegation of authority to local entities to adopt vehicular traffic ordinances is strictly construed. (*City of Lafayette* v. *County of Contra Costa* (1979) 91 Cal.App.3d 749, 756 [154 Cal.Rptr. 374].)

Section 21 of the Vehicle Code states: "Except as otherwise expressly provided, the provisions of this code are applicable and uniform throughout the State and in all counties and municipalities therein, *and no local authority shall enact or enforce any ordinance on the matters covered by this code unless expressly authorized herein.*" (Italics added.)

Vehicle Code section 21100 provides: "Local authorities may adopt rules and regulations by *ordinance or resolution* regarding the following matters:

"⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅

"(d) Regulating traffic by means of official traffic control devices meeting the requirements of Section 21400." (Italics added.)

Vehicle Code section 21101 allows local authorities to adopt regulations and rules, by resolution or ordinance, "for those highways under their jurisdiction."

Vehicle Code section 21104 provides: "No ordinance or resolution proposed to be enacted under Section 22101 or subdivision (d) of Section 21100 is effective *as to any highway not under the exclusive jurisdiction of the local authority* enacting the same, except that an ordinance or resolution which is submitted to the Department of Transportation by a local legislative body in complete draft form for approval prior to the enactment thereof is effective as to any state highway or part thereof specified in the written approval of the department . . . ." (Italics added.)

█ Local authorities may maintain traffic signs, signals and other control devices upon streets and highways within their local jurisdiction. (Veh. Code, § 21351.) However, state highways are not within the jurisdiction of local authorities to control or maintain under this section. (*Gillespie* v. *City of Los Angeles* (1950) 36 Cal.2d 553, 559 [225 P.2d 522].)[5] Thus, for example, local authorities may not establish crosswalks between intersections on state highways without the approval of the Department of Transportation. (*Authority Over Crosswalks,* 64 Ops.Cal.Atty.Gen. 335, 338 (1981).) Finally,

---

[5] The *Gillespie* court interpreted Vehicle Code section 465, the predecessor statute to Vehicle Code sections 21350 and 21351. The language of Vehicle Code sections 21350 and 21351 is virtually identical to that of former Vehicle Code section 465.

as the City has noted in its arguments below and on appeal, "No public or private street or road shall become a city street or road until and unless the governing body, by resolution, has caused [said] street or road to be accepted into the city street system; nor shall any city be held liable for failure to maintain any road unless and until it has been accepted into the city street system by resolution of the governing body." (Sts. & Hy. Code, § 1806.)

We now examine the evidence submitted by the parties in light of this statutory framework to determine if Ramsey has demonstrated a triable issue of material fact.

*There Was No Disputed Issue of Material Fact Concerning the City's Control Over Riverside Drive.* Kirchner stated in his declaration that the City did not own or maintain Riverside Drive at its intersection with Joy Street, and did not own or maintain the street lighting there. Kirchner stated in his deposition that he knew the City did not maintain Riverside Drive at that intersection, and that he had seen Cal-Trans performing maintenance there. Ramsey's attorneys also took the deposition of Ivan Tennant, the Deputy Road Commissioner of the County. Tennant was asked, "Who do you understand to have the responsibility for the maintenance, supervision and repair of Riverside Drive at or about its intersection with Joy Street?" Tennant replied, "That's a State Highway, so it's Cal Trans."

Ramsey's attorneys filed supplemental papers in opposition to the City's motion for summary judgment. Among those papers was a letter from the City Council of the City of Lake Elsinore stating that the "City Council, at its regular meeting on September 11, 1984, passed a resolution authorizing stop signs at . . . Riverside Drive at Joy. . . ." Ramsey's attorneys also filed a report to the City Council and Resolution of September 11, 1984 which states that the City must obtain written approval from the State "before signs can be placed and enforcement initiated." Ramsey also filed a letter from the Department of Transportation to the City *denying the City's request* to install stop signs at the intersection of Riverside Drive and Joy Street.

Kirchner stated in his declaration that Riverside Drive was exclusively within the jurisdiction of the State. Crommelin's declaration did not create any issue of fact; it merely raised a speculation that further discovery might disclose factual support for Ramsey's claims.

If the City did have authority to control the property in question, it would be a matter of public record. Such authority must be created by ordinance or resolution. (Veh. Code, §§ 21100, 21101, 21104; Sts. & Hy.

Code, § 1806.) Ramsey has not pointed out any such resolution or ordinance. In light of the statutes discussed above, the trial court was entitled to rule as a matter of law that the City did not have control over the site of the accident.

*Admissibility of Kirchner Declaration.* Ramsey complains that the City's showing on the motion for summary judgment was based on the declaration of the City's engineer, Kirchner. Ramsey objected to Kirchner's declaration in the trial court on the ground that no foundation was shown for Kirchner's statement that the City did not own or control the intersection. The trial court did not explicitly rule on the admissibility of Kirchner's declaration; counsel's failure to secure a ruling on the objection waives the objection. (*Haskell* v. *Carli* (1987) 195 Cal.App.3d 124, 129 [240 Cal.Rptr. 439].)

*Propriety of Award of Attorney's Fees and Costs.* Section 1038 requires a court to award attorney's fees and costs to a defendant who obtains a summary judgment in an action under the Tort Claims Act if the court determines that the proceeding was not brought in good faith and with reasonable cause. The requirements of good faith and reasonable cause apply not only to the filing of an action, but also to its continued maintenance. (*Curtis* v. *County of Los Angeles* (1985) 172 Cal.App.3d 1243, 1252 [218 Cal.Rptr. 772].)

To determine whether a party had reasonable cause to bring or maintain an action, we look to ". . . whether any reasonable attorney would have thought the claim tenable . . . ." (*Sheldon Appel Co.* v. *Albert & Oliker* (1989) 47 Cal.3d 863, 886 [254 Cal.Rptr. 336, 765 P.2d 498].) In *Sheldon Appel,* the defendant appealed from a judgment awarding the plaintiff damages in a malicious prosecution case in which the trial court had given the issue of probable cause to the jury. The Supreme Court reversed the jury award, holding that the "probable cause" element of the tort of malicious prosecution calls on the court to make an objective determination of the reasonableness of the defendants' conduct in initiating the lawsuit. Probable cause is measured by an objective standard determining ". . . the defendant's belief in, or knowledge of, *a given state of facts,* and not to the defendant's belief in, or evaluation of, *the legal merits of the claim.*" (*Id.*, at p. 879, original italics.) This standard recognizes that defendants have an " 'interest in freedom from *unjustifiable* and *unreasonable* litigation.' [Citations.]" (*Id.*, at p. 882, original italics.)

At a minimum, the standard of reasonable cause requires that the plaintiff's attorney have some articulable facts on which he can conclude that a particular person should be named as a defendant. Here, Ramsey

failed to raise any legitimate issue of the City's ownership or control of property where the accident occurred. As noted above, the State's ownership of Highway 74 is statutory. The City had assured Ramsey's former attorneys before the complaint was filed that the City had no control over Riverside Drive, alleged to be the site of the accident. The State admitted that it did own that intersection. We find it noteworthy that the State did not file any cross-complaint against the City.

Instead of facts, Ramsey merely states a legal principle that the liability of a public entity may be based either on ownership or control of property where an accident occurs. We agree with this premise; however, Ramsey does not suggest the nature of any such dangerous condition or the basis on which the City may exercise control. Ramsey fails to acknowledge the statutes which allocate responsibility for roadways in this state.

The case of *Searcy* v. *Hemet Unified School Dist.* (1986) 177 Cal.App.3d 792 [223 Cal.Rptr. 206] establishes that disregard of statutes is fatal to a plaintiff's claim of public liability. In *Searcy,* this court affirmed the trial court's judgment sustaining without leave to amend the demurrer of the Hemet Unified School District (School District) and the California Highway Patrol (CHP). In *Searcy,* a first grade student was struck by a car as she was walking home from school. The accident occurred in the middle of a block about one-half mile from the school at a site the schoolchildren often used as a short cut. (*Id.,* at p. 796.) The plaintiff sued the driver for her injuries and also named as defendants the School District, CHP and other public entities on the ground that they had caused or failed to remedy a dangerous condition. (*Id.,* at pp. 796-797.) The complaint alleged that the "dangerous condition" was the limited visibility of cars at the site of the accident, the habitual violation of the speed limit by drivers at that site, and the frequent mid-block street crossing by school children using the short cut. (*Id.,* at p. 797, fn. 1.)

The plaintiff also alleged on information and belief that there existed " 'other and additional duly adopted enactments' and other unspecified 'enactments' " (*Searcy, supra,* 177 Cal.App.3d at p. 801) which created a mandatory duty on the part of the School District to correct dangerous conditions at the accident site. (*Ibid.*) The court disagreed with the plaintiff's assertion that her complaint was not uncertain, because the existence of such enactments was presumptively within the knowledge of the School District. The court explained that " 'enactments' are generally a matter of public record, and facts that are ascertainable from public records may not properly be pleaded on information and belief. [Citations.]" (*Id.,* at p. 802.) The court continued, "Secondly, in California all government tort liability is dependent on the existence of an authorizing statute or 'enactment'

[citations], and to state a cause of action every fact essential to the existence of statutory liability must be pleaded with particularity, including the existence of a statutory duty. [Citation.] Duty cannot be alleged simply by stating 'defendant had a duty under the law'; that is a conclusion of law, not an allegation of fact. The facts showing the existence of the claimed duty must be alleged. [Citations.] Since the duty of a governmental agency can only be created by statute or 'enactment,' the statute or 'enactment' claimed to establish the duty must at the very least be identified." (*Ibid.*)

Here, as in *Searcy,* Ramsey did not identify any statute, ordinance or resolution on which the City's liability could be based. We conclude that Ramsey has failed to justify the initial filing of the complaint or the continued maintenance of his action against the City. The award of attorney's fees and costs was proper.

DISPOSITION

The judgment of the trial court is affirmed. Appellant to bear costs on appeal.

Hollenhorst, Acting P. J., concurred.

**McDANIEL, J.**—I respectfully dissent for the reasons listed below.

A. *City Failed to Produce Evidence That It Did Not Control Riverside Drive Near Its Intersection With Joy Street*

This is an appeal from the granting of a motion for summary judgment. As the majority points out, ". . . all doubts should be resolved in favor of the party opposing the motion." (*Powell* v. *Standard Brands Paint Co.* (1985) 166 Cal.App.3d 357, 362 [212 Cal.Rptr. 395].) More specifically, as *not* noted by the majority, ". . . the moving party's papers are strictly construed, while those of the opposing part[y] are liberally construed." (*Garcia* v. *Wetzel* (1984) 159 Cal.App.3d 1093, 1095 [206 Cal.Rptr. 251].)

Simply put, plaintiff here alleged that the property which was in a dangerous condition was Riverside Drive "at *or near*" its intersection with Joy Street, and that the City of Lake Elsinore (City) owned, maintained or controlled that property. City, in its motion for summary judgment, *alleged* that it did not own, control or maintain such property, but in support of this allegation *tendered as evidence* only the declaration of City Engineer Ron Kirchner, who stated that City did not own or maintain Riverside Drive "*at* its intersection" with Joy Street.

Even without construing Kirchner's declaration strictly, it is apparent that City only presented evidence that it did not own, maintain or control

Riverside Drive "*at*" its intersection with Joy Street, and that it failed to present any evidence that it did not own, maintain or control Riverside Drive anywhere else, including "*near*" its intersection with Joy Street.

B. *City Was Not Entitled to Judgment "As A Matter of Law" on the Basis of the Statutory Authority Cited by the Majority*

Although the majority opinion does not squarely face the above-noted evidentiary problem, it is aware of its existence, and it is this awareness which apparently has motivated an attempt to premise the affirmance of the judgment below on another basis, i.e., that the trial court could properly rule against plaintiff, *as a matter of law,* pursuant to Streets and Highways Code section 1806 and Vehicle Code sections 21100, 21101, 21104, and 21351. As demonstrated below, affirmance on such basis cannot be justified and operates to deny plaintiff his right to procedural due process.

1. *Vehicle Code Sections 21100, 21101, 21104 and 21351 Cannot Form a Basis for Affirmance*

Specifically, the majority uses the fact that "[plaintiff] has not pointed out any such resolution or ordinance [adopting regulatory power over the property in question]" (maj. opn., *ante,* p. 1540) as the basis for its conclusion that the trial court was entitled to rule as a matter of law, pursuant to Vehicle Code sections 21100, 21101, 21104 and 21351, that City had no control over the intersection. Use of these sections is improper for three reasons.

a. *Plaintiff Had No Notice That the Motion Would Be Based on Such Code Sections.*

Neither in its answer, nor in its motion for summary judgment, nor in its respondent's brief, nor in its oral argument did City raise Vehicle Code sections 21100, 21101, 21104, or 21351. Therefore, because the majority has itself raised these sections, plaintiff has been precluded from doing any discovery on, or briefing any legal arguments related to, their applicability. The use of these new code sections as a statutory defense to plaintiff's case, raised sua sponte on appeal, is thus a denial of due process and legally improper.

b. *Such Code Sections Could Not Have Been a Basis for the Trial Court's Decision.*

The trial court, never having been presented with this issue or with the Vehicle Code sections noted above, obviously could not have relied upon them as a basis for its decision, and certainly demonstrated no indication, in

its judgment or elsewhere, that it had decided against plaintiff "as a matter of law" rather than on the basis that there was no triable issue of material fact.

It is true, of course, that a summary judgment can and should be upheld if the trial court's decision was correct, even if not for the reasons stated. (*Barnett* v. *Delta Lines, Inc.* (1982) 137 Cal.App.3d 674, 682 [187 Cal.Rptr. 219].) However, this rule applies only when, as a matter of law, the complaint fails to state a cause of action, and the motion for summary judgment can, in essence, be treated as a motion for judgment on the pleadings. (*Ibid.*, and see also cases cited thereat.) Such is not the case here. Plaintiff adequately pleaded a cause of action for a public entity's liability for maintaining public property under its ownership *or control* in a dangerous condition.

### c. *Such Code Sections Do Not Sufficiently Negate Plaintiff's Theory of Liability Based on Control of Property in a Dangerous Condition to Justify a Judgment in Favor of City.*

A defendant moving for summary judgment must disprove *all* possible causes of action or theories of recovery set out in a plaintiff's complaint before it is entitled to summary judgment. (*Conn* v. *National Can Corp.* (1981) 124 Cal.App.3d 630, 639-640 [177 Cal.Rptr. 445]; see also Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (Rutter, 1989) § 10:126.)

Here, the Vehicle Code sections relied upon by the majority do not fully "cover the field" as to the manner in which a city can obtain sufficient control over a state highway to render it potentially liable if the property is maintained in a dangerous condition, and thus City is not entitled to summary judgment.

For example, Streets and Highways Code section 116 indicates that a city may acquire any part of the state's powers and jurisdiction over a state highway through a means other than a resolution or ordinance submitted to the Department of Transportation for its approval. Section 116, entitled, "Delegation of powers to city or county," provides: "The department [of Transportation] may delegate to any such city or county any part of the powers and jurisdiction vested by law in the department, except the power of approval, with respect to any portion of any such state highway within such city or county, and may withdraw such delegation."

In addition, Streets and Highways Code section 130, entitled "Cooperative agreements with county, city, or joint highway district," provides, in relevant part: "The department and any county, city, or joint highway

district, or any of them, may enter into a contract in respect to the proportion of the expense of the acquisition, construction, *improvement or maintenance* of any state highway to be borne by the respective parties to such contract. Any such contract may provide for the . . . *doing of the work, or any portion thereof, by any party to the contract,* pursuant to the laws governing such party with reference to such type of acquisition or such character of work." (Italics added.)

Thus, it would appear, regardless of the Vehicle Code sections relied upon by the majority, that City here *could* have entered into such a cooperative agreement with the state (a "maintenance agreement" such as was referred to in the declaration of plaintiff's expert witness, Crommelin, and that such an agreement could have given City the requisite kind of control over the property to subject it to liability if the property was maintained in a dangerous condition.

Furthermore, the Vehicle Code sections relied upon by the majority relate only to the local regulation of *traffic* on state highways. (See Veh. Code, § 21100 (d).) The majority opinion approaches the analysis in this case as though the only possible theory of liability must be based on City's failure to properly regulate "traffic by means of official traffic control devices . . . ." (Veh. Code, § 21100.) However, plaintiff's theory of liability is premised upon a "dangerous condition" of public property. Plaintiff alleged that the property was in a dangerous condition because of the defendant's failure to provide "adequate street lighting, traffic control signals, [and] crosswalks," *and* because they "*were otherwise negligent in constructing and maintaining said roadway* at the time and location of the subject accident."

Thus, the Vehicle Code sections relied upon by the majority are insufficient to demonstrate, even as a matter of law, that City has disproved totally one essential element of plaintiff's case, i.e., its *complete* lack of control over the property *or* lack of responsibility for any construction defects. For all we know from the current state of the record, the accident may have been caused in whole or in part by visibility problems related to road maintenance or construction, by engineering-related problems such as how the road was banked or curbed or narrowed, or by any number of such matters which could create a dangerous condition on the subject property.

*2. Streets and Highways Code Section 1806 Cannot Form a Basis for Affirmance*

The majority also makes a brief reference to Streets and Highways Code section 1806 as though that section is further authority for its position that

City could not have exerted any control over the subject property in the absence of a resolution, and that, therefore, plaintiff having failed to produce evidence of such a resolution, the granting of summary judgment was proper.

There are three basic problems with the majority's reliance on section 1806.

### a. *City Did Not Raise Section 1806 in a Timely Manner.*

Although City did raise Street and Highway Code section 1806 as an affirmative defense in its answer (unlike the other Vehicle Code sections raised, sua sponte, by the majority), City did not raise section 1806 *as a ground for its motion for summary judgment,* and instead simply quoted the language of section 1806 in its *reply* to plaintiff's opposition to the motion for summary judgment.

A moving party is required to state the grounds upon which a motion is made in its notice of motion. (Code Civ. Proc., § 1010.) The purpose of this requirement, of course, is to fairly apprise the opposing party of the issues involved so that he or she has notice and an opportunity to respond to the issues in the opposing papers. Raising an issue for the first time in one's reply papers is an obvious method to avoid giving one's opponent the requisite opportunity and time to respond mandated by Code of Civil Procedure section 437c, and one which we should not countenance.

Here, City merely stated that its motion was made "on the ground that no triable issue of fact exists and the action has no merit in that [it] did not own or control the public property referred to in plaintiff's complaint." Although documents referred to in the notice and attached to it may be considered to determine the sufficiency of the notice to apprise the opposing party of the issues raised (*Tarman* v. *Sherwin* (1961) 189 Cal.App.2d 49, 51-52 [10 Cal.Rptr. 787, 85 A.L.R.2d 989]), the accompanying documents here, i.e., the memorandum of points and authorities and supporting declarations, never mentioned either section 1806 or anything at all remotely related to the existence or nonexistence of resolutions and/or ordinances concerning the subject property. Therefore, the trial court could not have considered section 1806 as a basis for granting the motion (and in fact there is no reason to think that it *did*), and the majority certainly should not now use this section to affirm on appeal. (See *Sprecher* v. *Adamson Companies* (1981) 30 Cal.3d 358, 373 [178 Cal.Rptr. 783, 636 P.2d 1121]: "[R]espondents' moving papers gave little warning, prior to the filing of the reply memorandum of points and authorities, that they would seek summary judgment on the ground that the failure to take steps to control the

landslide was reasonable. It is, then, understandable why appellant did not marshall extensive facts addressing a contention not made in the respondents' moving papers. (See *Webster* v. *Southern Cal. First Nat. Bank* (1977) 68 Cal.App.3d 407, 416 [137 Cal.Rptr. 293].) When this contention was made, only two days remained before the hearing on the motion. For these reasons, the summary judgment should not have been granted.")

> b. *City Did Not Produce Any Evidence to Support Its Belated Reliance on Section 1806.*

When the party moving for summary judgment is the defendant, as here, it must "either negate a necessary element of the plaintiff's case or state a complete defense. [Citation.]" *LaRosa* v. *Superior Court* (1981) 122 Cal.App.3d 741, 744-745 [176 Cal.Rptr. 224]; see also Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial, *supra,* at § 10:125.) This means that the defendant moving party must do more than point to the opposing party's lack of evidence—the defendant has the burden of *producing evidence* to support its defense. (*Vesely* v. *Sager* (1971) 5 Cal.3d 153, 169-170 [95 Cal.Rptr. 623, 486 P.2d 151]; *Pena* v. *W. H. Douthitt Steel & Supply Co.* (1986) 179 Cal.App.3d 924, 928-929 [225 Cal.Rptr. 76] and cases cited therein.)

Here, of course, City simply argued that plaintiff had not produced any resolution or ordinance; it did not affirmatively produce evidence, which it could have done by way of declaration if such declaration could be truthfully made, that there were no relevant resolutions or ordinances.

> c. *City's Reliance on Section 1806, Even If It Had Been Timely and Even If It Had Been Supported by Evidence, Is Still Insufficient to Negate All Plaintiff's Possible Theories of Recovery Based on City's Alleged Control of the Subject Property.*

A defendant moving for summary judgment must disprove *all* possible causes of action or theories of recovery set out in a plaintiff's complaint. (*Conn* v. *National Can Corp., supra,* 124 Cal.App.3d 630, 639-640; see also Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial, *supra*, at § 10:126.) Here, even assuming City had properly raised the defense of Streets and Highway Code section 1806, the existence of section 1806 in no way negates all plaintiff's possible theories of recovery.

Streets and Highways Code section 1806 was enacted to abrogate the holding in *Union Transp. Co.* v. *Sacramento County* (1954) 42 Cal.2d 235, 244 [267 P.2d 10] that no formal acceptance of an offer of dedication of a road or street is necessary, and that an implied acceptance of dedication to a

public use is a sufficient basis on which to hold that a public entity has accepted the road or street into its road system with the concomitant responsibility for making repairs on such a road or street.

The statutory abrogation of the court-created doctrine of implied acceptance of dedication, however, in no way negates the fact that a city may contractually accept responsibility for maintaining, improving, or even constructing sections of *state highways* pursuant to Streets and Highways Code sections 116 and 130, as discussed *supra*, without reference to the entirely separate process by which the dedication of public and private roads and streets may be formally accepted into the city's street system.

Thus, the existence of Streets and Highways Code section 1806 in no way completely negates plaintiff's claim that City had some form of control over the subject property, and it therefore cannot form the basis for affirmance of the summary judgment in City's favor.

C. *The Award of Attorney's Fees and Costs as Sanctions Must Be Reversed*

1. *The Award Should Be Reversed Because the Judgment Should Be Reversed*

Because the judgment should be reversed, it necessarily follows that the award of attorney's fees and costs as sanctions should be reversed as well; the language of Code of Civil Procedure section 1038 makes it clear that such an award may only be made in connection with the *granting* of a summary judgment. However, even assuming for purposes of argument that the judgment should be affirmed, the majority opinion fails to demonstrate that the award of sanctions against plaintiff is justified.

2. *The Majority Opinion's Reliance on Searcy Fails to Demonstrate That Plaintiff's Filing of This Action Against City Was Unjustified*

According to the majority, plaintiff's initial filing of his complaint against City was unjustified, pursuant to the holding in *Searcy* v. *Hemet Unified School Dist.* (1986) 177 Cal.App.3d 792 [223 Cal.Rptr. 206]. The majority's reliance on *Searcy* as a basis to affirm the award of attorney's fees and costs to City against plaintiff is misplaced.

In *Searcy, one* of plaintiff's causes of action was based on Government Code section 815.6, which provides, when a public entity is under a *mandatory* duty imposed by an enactment designed to prevent a particular type of harm, that the entity will be liable for an injury of that kind if it failed to

discharge such mandatory duty. Plaintiff in *Searcy* failed to specify the particular enactment which created a mandatory duty as required in a cause of action based on Government Code section 815.6, and it was in that context that the *Searcy* court held that plaintiff, by failing to cite a particular code section or regulation in her complaint, had failed to adequately state a cause of action *under Government Code section 815.6.*

Here, of course, plaintiff is not proceeding under Government Code section 815.6, but instead has pleaded a cause of action pursuant to Government Code section 835:

"Except as provided by statute, a public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:

"(a) A negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or

"(b) The public entity had actual or constructive notice of the dangerous condition under Section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition."

A cause of action brought pursuant to Government Code section 835, unlike a cause of action brought pursuant to Government Code section 815.6, does not require as an element that plaintiff plead that the defendant public entity was under a *mandatory* duty imposed by a *specific* enactment. It simply requires plaintiff to plead that (1) the property was in a dangerous condition at the time of the injury; (2) that the injury was caused by the dangerous condition; (3) that the dangerous condition created a reasonably foreseeable risk of the occurrence of such an injury; and that (a) the dangerous condition was negligently or intentionally created by one of the entity's employees or (b) the entity knew of the dangerous condition in time enough to correct it but failed to do so. Plaintiff here did so plead, and the majority's conclusion that "Ramsey has failed to justify the initial filing of the complaint or the continued maintenance of his action against the City" [maj. opn., *ante,* p. 1542] is simply an inaccurate assessment based on a misreading of *Searcy.*

3. *The Majority's Reliance on City's Unsworn Statements to Plaintiff's Attorney Before the Action as a Basis for Finding the Initial Filing of the Complaint Was Unjustified Creates an Unworkable Conflict of Interest for Attorneys*

The majority opinion contains a troubling passage concerning plaintiff's attorneys' duties vis-à-vis their clients versus their potential liability for attorney's fees and costs as sanctions pursuant to Code of Civil Procedure section 1038. In my opinion, the standard of proof of good faith in filing a lawsuit against a public entity, as delineated in its application by the majority to the facts of this case, creates an unworkable conflict of interest for plaintiff's attorneys.

According to the majority, "At a minimum, the standard of reasonable cause requires that the plaintiff's attorney have some articulable facts on which he can conclude that a particular person should be named as a defendant. Here, [plaintiff] failed to raise any legitimate issue of the City's ownership or control of property where the accident occurred. . . . *The City had assured* [plaintiff's] *former attorneys before the complaint was filed that the City had no control over Riverside Drive,* alleged to be the site of the accident. The State admitted that it did *own* that intersection. We find it noteworthy that the State did not file any cross-complaint against the City." [Maj. opn., *ante*, pp. 1540-1541, italics added.]

This passage is troubling for the following reasons:

First, plaintiff *did* raise a legitimate issue regarding City's ownership or control by alleging that "Riverside Drive and Joy Street were public streets and highways in the City of Elsinore, County of Riverside, and State of California," and by alleging that the accident occurred at or near the two-ways' intersection.

Second, attorneys are required diligently to represent their *own* clients' interests. This means that they cannot rely on potential defendants' "assurances" that the defendants are not liable as a basis for deciding not to name someone as a defendant; a self-serving representation by an interested party hardly rises to the level of dispositive truth. If one were to carry the majority's reasoning to its logical conclusion, a plaintiff would be required to dismiss his or her action upon a public entity's filing of a general denial.

Here, City's "assurance" consisted of, at *best*, the following two letters:

A first letter from City's claims administrators to plaintiff's then attorneys, advising them that the claims administrators had advised City to reject plaintiff's claim because the incident in no way involved City, because it "occurred at the location of State Highway 74 at the *intersection of Joy Street.* Highway 74 is owned and maintained by the State of California" (italics added), and warning plaintiff's attorneys that if plaintiff chose to pursue City, City would seek the remedies provided by Code of Civil Procedure section 1038.

A second letter from City's city engineer addressed to defendant and cross-complainant Gray's attorney, *not* to plaintiff's attorneys (*nor is there any indication that plaintiff's attorneys were sent a courtesy copy*), which stated in its entirety:

"I, Ron Kirchner, City Engineer for this City of Lake Elsinore, do hereby declare that the City of Lake Elsinore did not *in 1986* have ownership or control of State Route 74 *near* Joy Street.

"I further declare that this location is within the exclusive jurisdiction of the State of California." (Italics added.)

Neither of these letters supplies the kind of solid evidence which a reasonable attorney would need in order to decide not to name a public entity as a defendant. Neither letter explains the evidentiary basis upon which City's claim of nonownership or control is based, and neither letter lays any foundation to demonstrate the letter writer's personal knowledge of City's lack of ownership or control. Additionally, neither letter is made upon penalty of perjury.

Third, the state's admission of ownership came *after* City had been named in the complaint, and, in any event, admission of *ownership* is not admission of *maintenance and control,* an entirely separate potential basis of liability.

Fourth, the fact that the state failed to file a cross-complaint against City is irrelevant unless one knows *why* the state did not file a cross-complaint. The majority assumes that it must have been because the state had unassailable information indicating that City had *no* liability under *any* theory. However, it might be that the state's attorneys simply did not consider filing such a cross-complaint, or had not themselves thoroughly investigated City's potential liability. Unsupported speculation cannot form any basis for

coming to the serious conclusion that an attorney filed a lawsuit in bad faith.

For the reasons noted above, I would reverse the judgment in its entirety.